## CARVER *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

Argued April 18th, 1884.—Decided May 5th, 1884.

*Claims against the United States.*

If a treasury agent for the collection of cotton, who was convicted by a military commission of defrauding the United States, and was sentenced to pay a fine, and paid the fine and was then released, consents after his release that the money may pass into the treasury, he cannot maintain an action in the Court of Claims to recover it back on an implied contract to refund it, either on the ground that the fine was illegally imposed, or that it was paid under duress.

The facts making the case fully appear in the opinion of the court. The case below is reported 16 C. Cls. 361.

*Mr. S. S. Henkle* for appellant.

*Mr. Solicitor-General* for appellee.

Mr. Justice Harlan delivered the opinion of the court.

The case made by the finding of facts in the court below is, substantially, as will be now stated.

On the 14th day of August, 1865, the President of the United States instructed Major-General Thomas, commanding the military division embracing the State of Alabama, to examine whether frauds were not being practised by treasury agents in the collection of cotton, and to cause those ascertained to be guilty, whether connected with the Treasury Department or with the military forces, to be dealt with in the most summary manner.

Previous to that time, about July 1st, 1865, the claimant Carver was a sub-agent for the collection of cotton in behalf of the government, and, with another, was so engaged in Choctaw County, in that State. His authority as such agent terminated August 5th, 1865. But, under certain regulations, then recently adopted, he became a bonded special agent of the Treasury Department, for the collection of cotton in the same county, and, in that capacity, entered upon his duties on

the 29th day of August, 1865. He was superseded on the 16th of September thereafter, but, while in office, he collected and appropriated, in connection with others, about 600 bales of cotton, none of which was ever turned over to, or received by, the United States.

On October 4th, 1865, the claimant having been previously arrested, a military commission, under an order of the general commanding the department of Alabama, was convened for his trial, and he was tried and found guilty of numerous frauds practised by him while holding and exercising the office of bonded special agent of the Treasury Department. The sentence imposed upon him was a fine of $90,000, "to be paid into the Treasury of the United States, and that he be confined at hard labor in such penitentiary as the commanding general may direct for the term of one year and until such fine of ninety thousand dollars ($90,000) shall be paid." The finding and sentence were approved by the department commander, and the provost-marshal-general was required to, see that the sentence was carried into effect.

On November 7th, 1865, the claimant paid the fine, and so much of the sentence as imposed imprisonment was remitted by the department commander. Carver was, thereupon, released from arrest. Out of the amount recovered from the claimant, the government paid one-fourth to W. M. Moulton, as compensation for his giving information of the alleged frauds and preparing the case for trial. The balance was covered into the treasury.

After Carver's trial and conviction, and after the payment of the fine imposed upon him, he endeavored to make amends for the frauds of which he was found guilty. He proposed to the department commander to make a full statement of cotton transactions in that county, in which the government was concerned, and of which he had any knowledge or information, provided the $90,000 collected from him was allowed as a credit on his accounts; also to guarantee the further recovery of from $10,000 to $15,000, he receiving a fair interest, say one-fourth, for such recovery, which was to be had without suit or expense to the government. The Secretary of the

Treasury, in a communication to the department commander, signified his willingness "to consider the $90,000 collected from Carver in the form of a fine as a credit for that amount on any account the government may have against him growing out of his connection with cotton in Choctaw County, and to allow him for his services, expenses, &c., in the premises, 33⅓ per cent. of any further sums he may recover and pay over for the benefit of the national treasury on said account."

Subsequently, on May 17th, 1866, Carver submitted to the Secretary of the Treasury a communication, signed by himself, showing that the amount really due the government on cotton collected was $94,243.35, instead of $90,000, and asked the decision of that officer "whether said balance of $4,243.35 shall be collected, or whether, under all the circumstances, said balance shall be relinquished." On June 14th, 1866, Carver paid said balance of $4,243.35 to the provost marshal of Alabama, who, by order of the Secretary of the Treasury, paid to him the sum of $1,414.45.

The present action was commenced by Carver on December 15th, 1871. It proceeds upon these grounds: That the charges against him before the military commission were false and feigned; that the military commission by which he was tried was without jurisdiction in the premises, since he, not being in the military service, nor a contractor for military arms or supplies, was not subject to trial otherwise than in the civil courts; also, that its proceedings were wholly unauthorized, illegal, and void. For these reasons, he claimed that an action as upon implied promises and contracts had accrued to him against the United States for money had and received to his use and benefit; and for said sum of $90,000 he prayed judgment. His petition was dismissed.

The claim of appellant is entirely without merit. Under the findings of fact, which this court must accept as true, it is unnecessary to consider any question involving the authority and jurisdiction of the military commission before which the claimant was arraigned, and by means of which the government compelled him to pay into its treasury the sum of $90,000; for, if it were conceded that Carver was not subject to be

tried in that mode, and that the entire proceedings against him were illegal and void, it yet appears, that, after his release, he voluntarily conceded that there was justly due from him to the government a larger sum than he had paid ; and, upon the basis of that concession, he secured a credit upon his accounts for the amount he had so paid, receiving, out of the balance, admitted to be due from and chargeable to him, the sum of $1,414.45. We can imagine no reason why it was not competent for him, without reference to the legality of the proceedings before the military commission, to come to an understanding with the authorized officers of the government, substantially upon the basis suggested by him and acceded to by them. Even if the original payment to the government was under duress, he had the right, subsequently, to agree, as he did, that what the government coerced him to pay was, in fact, fairly due upon a proper settlement of his accounts. And when, by way of supplement to, and in execution of, that agreement, he accepted, as compensation for his services, or as a gratuity, a portion of the balance justly due from him, he is estopped to raise any question as to the legality of the methods employed to collect from him what should have been paid without compelling the government to expend, for its collection, the large sum that was allowed Moulton for his services.

*The judgment is affirmed.*