### No. 12,372.

### WILLIAM GRANT VS. JOHN A. BUCKNER.

A party who is proceeded against in a State court by a receiver in a Federal court for the payment of rents due, may plead in compensation and extinguishment thereof, a sum said receiver has previously collected in excess of what he was entitled to have received.

APPEAL from the Seventh Judicial District Court for the Parish of East Carroll. *Montgomery, J.*

---

*C. S. Wyly* and *J. D. Rouse* for Plaintiff, Appellant.

---

*Joseph E. Ransdell* and *Saunders & Miller* for Defendant, Appellee.

---

Argued and submitted January 23, 1897.
Opinion handed down February 15, 1897.

---

The opinion of the court was delivered by

WATKINS, J. This is a suit for rent, and it was defended mainly upon the plea of offset or compensation, and on the trial there was judgment in favor of the plaintiff for the amount of the debt, and a

corresponding judgment in favor of the defendant, one judgment compensating and extinguishing the other. From that judgment the plaintiff prosecutes this appeal.

The facts necessary to be stated are very fairly recited in the original brief of defendant's counsel, and to which there appears to be no objection urged on the other side, and consequently we append an extract therefrom as furnishing an historical *resumé* thereof, viz.:

"The present suit grows out of a receivership proceeding which has been pending for many years in the United States Circuit Court for the Eastern District of Louisiana.

"The controlling facts bearing upon this testimony may be briefly stated.

"Oliver J. Morgan was, in *ante-bellum* times, a rich planter, owning five plantations in Carroll parish, Louisiana. His wife died intestate, in 1844, leaving but two children. All the property standing in her husband's name at the time of her death belonged to the community of acquets and gains that existed between them. Her two children, therefore, as her sole heirs, became, on her death, the owners of her undivided one-half of the community property.

"Mr. Morgan, however, wished to settle, during his own lifetime, the rights of his two children in his wife's estate and his own. In execution of this design, he conveyed, in 1858, certain property to Mrs. Julia Morgan, one of his daughters, then living, partly as a donation from himself and partly in satisfaction of her rights as one of her mother's heirs. And to the children of a pre-deceased daughter, Mrs. Kellam, he made a similar conveyance of other property, partly as a donation and partly in satisfaction of their rights as heirs of Mrs. Kellam. The defendant, John A. Buckner, is now the sole representative and heir of the interest of the Kellam children. Melbourne plantation was the property so conveyed and donated by Mr. O. J. Morgan to the children of his pre-deceased daughter, Mrs. Kellam, in satisfaction of their interests in his wife's estate and his own. Mr. Morgan died in 1860, and there was then no question as to the enormous solvency of his estate. But as the result of the war partly from the emancipation of the slaves and partly for other causes, the value of the estate was greatly decreased by 1867. In that year an administration of the estate of Oliver J. Morgan was opened and all of his property sold. At these sales the heirs bought

in the plantations so as to continue owning them in the same manner as had been intended by Mr. Morgan.

"Some years after these sales Gay, a personal creditor of Oliver J. Morgan, and not of the community, filed a bill in equity in the Federal Circuit Court to set the probate sales aside on the ground of fraud. After a long litigation the probate sales were set aside. But the avoidance of these sales simply subjected the community interest of the succession of Mr. O. J. Morgan in the several plantations to the pursuit of his creditors, but did not forfeit or affect the interests of the descendants of his two daughters to their mother's rights in the community. It became, therefore, incumbent on the Federal court to determine in what proportion and by what title the several plantations belonged to the heirs of Mrs. O. J. Morgan, and in what proportion they belonged to the succession of Mr. O. J. Morgan, her husband. The determination of this question was complicated by the fact that the plantations and their equipment constituted a part, and not the whole, of the community property as it had existed from Mrs. Morgan's death, in 1844, to her husband's death, in 1860, the slaves and much other property having disappeared during the war. It was further complicated by the fact that each branch of Mrs. Morgan's heirs had accepted from her husband, after her death, specific property in satisfaction of their interests in her estate, and that the whole of the property so accepted had from that time on been in the possession and enjoyment of the heirs.

"The Supreme Court of the United States finally adjusted the interests of the heirs and of the creditors. Mellen vs. Buckner (139 United States, 410). In this adjustment it was decreed that John A. Buckner, as sole surviving representative and heir of one branch of Mrs. Morgan's heirs, should be recognized as owner of one-half of Melbourne plantation, and that the other half of said plantation should be liable for the personal debts of Oliver J. Morgan. The decree was silent as to the ownership of the revenues of the plantation, but contains nothing indicating that the revenues were not to follow the title. The decree of the United States Supreme Court recognized that the acts of donation and conveyance executed by Mr. O. J. Morgan in 1858 were valid in so far as they conveyed specific property to his wife's heirs in satisfaction of their interest in her estate, but held that they were void in so far as they purported to be donations of property of his own. That this is the effect

and meaning of that decree has been declared by the Circuit Court. The result, therefore, of this decree is to establish that John A. Buckner, or those of whose rights he is now sole heir, have been, since 1858, owners of an undivided one-half of Melbourne plantation. The decree simply ascertains and declares the fact as it had always existed.

"Before the final decree of the United States Supreme Court in 1891 (Mellen vs. Buckner, 139 United States, 388), all the plantations had been in charge of a receiver appointed by the Federal Court in the suit to set aside the probate sales. This receiver had rented Melbourne plantation as an entirety to the defendant, John A. Buckner, for the years 1886, 1887, 1888 and 1889, and by his admission (Tr., p. 63) had collected from him nine thousand nine hundred dollars, as the rent of the whole of said plantation for said years. According to this showing, the receiver, acting as receiver, had collected from Buckner, for rent, four thousand five hundred dollars more than he was entitled to collect during the years 1886 to 1889. He now brings this suit to collect from Buckner the rent for one-half of Melbourne plantation for the years 1891 to 1892; one-half of the taxes on Melbourne for those years, and a trifling sum for the rent of some other property, aggregating in all two thousand and fifty dollars and twenty-two cents.

"To this demand Buckner pleads in compensation and reconvention the amount due him by the receiver, about four thousand six hundred and fifty-four dollars and twenty-five cents. The lower court allowed the plea, so far as required to extinguish the claim propounded by the receiver in this suit, but did not give judgment over against the receiver for the surplus (p. 75).

"The contention of the defendant is that the plaintiff, in his capacity as receiver, has already collected from him (defendant) more than double the amount now sued for; that this amount was collected by the receiver as rent for the very plantation, for additional rent of which this suit is brought; that on a full accounting of rents due to and collected by the receiver from defendant for rent of Melbourne plantation, the receiver has been overpaid by several thousand dollars; that what the plaintiff owes defendant is due in his capacity as receiver for money actually paid by defendant to plaintiff since his (plaintiff's) appointment as receiver, and which, having been unjustly collected, should be at once withdrawn from the funds of the receivership and returned to defendant."

In response to this plea the plaintiff argues:

"That the decree of the United States Supreme Court *gave* defendant one-half of Melbourne plantation in payment and satisfaction of a debt due him by the succession of O. J. Morgan, but did not give him the *revenues* accruing therefrom antecedent to the gift."

As explanatory of the situation of affairs in the United States Circuit Court we append the following decree of that court, which embraces the primary subject of the contestation in the instant case. It is as follows viz.:

"United States Circuit Court, Eastern District of Louisiana.

"D. C. MELLEN, Administrator, etc.  
vs.  
"OLIVER J. MORGAN, Testamentary Ex., etc., *et al.*  
"JOHN A. BUCKNER ET AL.  
vs.  
"D. C. MELLEN, Administrator, etc.  
"NARCISSE K. JOHNSON, ET AL.  
"D. C. MELLEN, Administrator etc.  }All Consolidated.

"On application of John A. Buckner *et al.* for a partial rehearing.

"The decree complained of, and the master's report upon which the decree is based, are founded on the proposition that in the main case, originally, Gay, Administrator, etc., vs. Morgan, Dative Testamentary Executor, etc., *et. al.*, the complainant for himself and the other creditors recovered from the estate of Oliver J. Morgan, deceased, and brought into court as a fund to be distributed to the creditors and claimants of such estate, a large landed property belonging to said Oliver J. Morgan, situated in Carroll parish, State of Louisiana, and consisting of five plantations contiguous to each other, to-wit: Wilton, Melbourne, Westland and Morgan.

"The opinion of the Supreme Court, rendered in the case and reported in Johnson vs. Waters, 111 United States, 640, in connection with the decree there directed to be entered, seems to support such proposition.

"The only reservation referred to in the opinion found in the decree directed is thus stated in the decree:

"The said master may apply to the court from time to time for further directions, which are hereby reserved, especially as to the question whether the succession of Julia Morgan, deceased, is entitled to any portion of the proceeds arising from the sale of said

lands by virtue of the act of sale and donation made to her by Oliver
J. Morgan in 1858, so far as the said act was a sale and not a dona-
tion.

"The opinion of the court is clear that the act of 1858 was void as
a donation, and it apparently intimates, as this court afterward
decided, that it was equally void as a sale.   The opinion and decree
of the Supreme Court, however, rendered in the consolidated cases
of Mellen vs. Buckner and Mellen vs. Johnson, reported in 139
United States, 388, when carefully read and considered in the light
of the facts and circumstances of the case, puts a different view
upon the matter.   In that case the act of 1858, while still held to be
void as a donation, is held to be valid (as a sale or appropriation)
for so much of the lands in question as were received by the heirs of
Narcisse Deeson in payment of the debts due by them on account of
the interest Narcisse Deeson had as the wife of Oliver J. Morgan in
the community property, and it is said that this was substantially
the view which the court entertained, although not fully explained
in the case of Johnson vs. Waters.

" And the Supreme Court, probably, in order that no further mis-
take might be made as to the scope and effect of their opinion, ren-
dered a specific decree in which after consolidating the causes then
before the court with the principal case of Gay, Administrator, vs.
M. F. Johnson, Executor, etc., and by way of supplement to the
decree in said principal case, it was among other things decreed that
the heirs of Julia Morgan, deceased, and of Oliver H. Kellam,
deceased, as creditors of the estate of Oliver J. Morgan be rejected,
and that in place of such supposed claims the said heirs were entitled
to have and retain a certain claim portion of said Oliver J. Morgan's
estate, free from the claims of his creditors, to-wit: one two-fifths
of the other four plantations to the Julia Morgan heirs; the decree
then provides that all the remaining interests in said plantations
shall be subject to the payment and satisfaction of the debts due to
the creditors who shall have established their debts before the mas-
ter in said original suit, and then for a partition in kind, or by lici-
tation, as the said heirs should direct.

" From this last opinion and decree of the Supreme Court in the
matter, we are forced to conclude that the portions of lands set off
and adjudged to the heirs of Julia Morgan and heirs of O. H. Kellam,
Jr., were so set off and adjudged to them as the owners thereof in their

43

*own right*, as the heirs of Julia Morgan and O. H. Kellam, Jr., who were the heirs of Narcisse Deeson, the wife of Oliver J. Morgan, and not to them in any way as the heirs of Oliver J. Morgan, *or as creditors or claimants of his estate.*

"This would be very clear to us were it not for the increase of about fifteen per cent. allowed to the heirs of Julia Morgan and about seven per cent. allowed to the heirs of Oliver H. Kellam, Jr., over the portions said by the Supreme Court to have been acquired by them under the act of 1858, so far as it was valid, which increase was certainly taken out of the estate of Oliver J. Morgan, but which was considered admissible by the court on general principle of equity.

"To the extent of this increase the heirs of Julia Morgan and Oliver H. Kellam, Jr., participated in the fund recovered in the original case of Gay, Administrator vs. Morgan, Executor, *et al.*, but the careful reading and consideration of which we have given the opinions and decrees of the Supreme Court, and particularly the supplemental decree in all the cases consolidated, give us the firm impression that the court intended *to hold and declare that the portions recovered by said heirs were theirs of right*, and that they were to have them not only free of the claims of creditors of the estate of Oliver J. Morgan, but free from all costs and claims, except as in the several decrees adjudged, and as thereafter might be necessary in effecting partition.

"It follows that the petition of the Kellam heirs for a rehearing of the final decree, rendered June 2, 1893, should be granted, but only granted so far as said heirs are concerned, unless the maintenance of the exceptions filed by them necessarily required a revision of the decree of distribution. If such revision is not necessary, then it seems that, as we have fully examined the question of the liability of the Kellam heirs to contribute to the expenses in the original suit of Gay, Administrator, vs. Morgan, Testamentary Executor, we may now grant an order granting a limited rehearing, and at the same time pass a decree sustaining the exception of the Kellam heirs, but otherwise maintaining the decree of June 2, 1893, and thus put an end to the long litigation of the case as far as this court is concerned.

"(Signed)        DON A. PARDEE, *Circuit Judge.*

"Judge Parlange concurs.

"April 17, 1895."

*Vide* Johnson vs. Waters, 111 U. S. 640; Mellen vs. Johnson, 139 U. S. 388.

From the foregoing opinion and statement of facts, it is clear that prior to the final adjudication by the Supreme Court of the relative rights of the respective parties, all of the plantations involved in the litigation had been under the control and management of the receiver, and that he had rented the entire Melbourne plantation to the defendant, John A. Buckner, for the years 1886, 1887, 1888 and 1889, and had collected rents of him therefor, aggregating nine thousand nine hundred dollars in amount—that is to say, four thousand nine hundred and fifty dollars more than he was entitled to collect during those years.

As the present suit involves the rent of the years 1890 and 1891, and some small arrearages of taxes, the defendant pleads, in compensation and extinguishment thereof, a sufficient amount of said sum in excess, to satisfy the receiver's demands.

In this court the defendant and appellee has answered the plaintiff's appeal, and prayed that the judgment appealed from be so amended in his favor as to reserve him "the right to demand and recover from said William Grant, receiver, the difference between the amount required to compensate the demands of the said William Grant, receiver, set up in this suit, and the amount due to said John A. Buckner, by the said Wm. Grant, receiver."

It seems to us to be perfectly apparent that the decree of the court recognizing the right of the heirs of Julia Morgan to one-half of the Melbourne plantation, of necessity carried therewith a right to a proportionate amount of its annual revenue and equally so the right to demand of the receiver a restitution of the amount he has unduly received.

We are of opinion that the defendant has the right to urge the plea of compensation to an amount sufficient to relieve himself from personal liability to the plaintiff. As the receiver has sought the enforcement of his demands in a court of the State, he can not, at the same time, turn the defendant around to another recourse in the United States Circuit Court.

The demand in compensation herein made is but a claim to discharge a present obligation for the rent of two years now due, by the application thereto *pro tanto* of the avails of previous years during which the receiver collected a greater sum than he was entitled to

have received. Beattie, Syndic, vs. Scudday, 10 An. 404; Mercer Admr., vs. Lobit, 10 An. 47; Lemane vs. Lemane, 27 An. 694.

The doctrine *quæ temporalia sunt* applies to the defendant's demands. What he might not use as a sword he may use as a shield.

We are of opinion that defendant is justly and equitably entitled to compensation.

That while admitting possession of rents taken from the defendant to a greater amount than he was entitled to receive, the receiver can not stay the defendant's demand in compensation, as a means of enabling him (the receiver) to still further increase his receipts and relegate him to another tribunal for ultimate settlement thereof.

The judgment should be so amended as to conform to the answer of the appellee, and as thus amended, the same should be affirmed.

It is therefore ordered and decreed that the judgment appealed from be so amended as to reserve the defendant's right to demand of and receive from the plaintiff the residue of the amount of the rents he has collected in excess of the sum actually due by the defendant, after a sufficiency thereof has been used to extinguish by compensation the demands of said receiver in this suit; and that as thus amended same be affirmed at the cost of the plaintiff and appellant in both courts.