## GRANT *v.* BUCKNER.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 89.   Submitted November 29, 1898. — Decided December 19, 1898.

Certain real estate in Louisiana, consisting of five plantations standing in the name of J. Morgan, was community property. His wife died in 1844, leaving two children as her heirs; and in 1858 Morgan conveyed all the real estate to his children and grandchildren. He died in 1860, and in 1872 his creditors took proceedings to set aside the conveyance and to subject his interest in the property to the payment of his debts. Their contention was sustained by this court in *Johnson* v. *Waters*, 111 U. S. 640. Then a receiver was appointed to take charge of both interests in all the property. The portion to which this suit relates was in the possession of Buckner, claiming under the conveyance made by Morgan in 1858. The receiver threatening to eject him, Buckner, in order to remain in possession, took a lease of the whole plantation from the receiver. In 1891 it was decided in *Mellen* v. *Buckner*, 139 U. S. 388, that one undivided half of the plantation belonged to Buckner, and that only the remaining half was subject to the debts of Morgan, and that if the heirs should not desire a severance of their portions, the whole should be sold and the proceeds divided in accordance with the decree. The sale was made two

years later. Buckner paid the receiver rent for the whole plantation from 1884 to 1891, but paid nothing thereafter. This action was commenced by the receiver in a state court of Louisiana to recover from Buckner rent for one half of the estate for 1891 and 1892, and one half of the taxes thereon for those years. Buckner in reply claimed the right to offset against the receiver's demand one half of the rent which he had paid to him between 1884 and 1891, and asked for judgment against the receiver for the surplus. The Supreme Court of Louisiana sustained the offset and reserved to Buckner the right to recover the surplus. *Held:*

(1) That Buckner was entitled to set off against the rent unquestionably due for the undivided half of the plantation for 1891 and 1892 one half the amount paid by him for rent between 1884 and 1891;

(2) That he was not precluded from obtaining the benefit of this right in the state courts by the fact that the receiver was an officer of the Federal court, or by any proceedings had in that court, as the receiver voluntarily went into the state court;

(3) That the jurisdiction of the state court was clear, and its judgment is affirmed.

THE case is stated in the opinion.

*Mr. J. D. Rouse* for plaintiff in error.

*Mr. Thomas Marshall Miller* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

This case comes on error to the Supreme Court of the State of Louisiana. It is perhaps the last step in a litigation which has been going on for a quarter of a century, and which has twice appeared in this court. *Johnson* v. *Waters*, 111 U. S. 640; *Mellen.* v. *Buckner*, 139 U. S. 388. In those cases the full story of the litigation is told. For the present inquiry it is sufficient to note these facts: Prior to the late civil war Oliver J. Morgan was the owner of five plantations in the State of Louisiana. His wife died intestate in 1844, leaving two children as her sole heirs. The property standing in his name was community property. In 1858 he conveyed the plantations to his children and grandchildren. The purpose of this conveyance was, first, to secure to the grantees their shares in the property as the heirs of his wife; and, secondly, to make a donation from himself. He died in 1860. In 1872

certain creditors of Morgan, creditors of him individually and not of the community, brought suit in the Circuit Court of the United States to set aside the conveyance, and subject his interest in the property to the payment of their debts. Their contention was sustained by the Circuit Court, and its decree was substantially affirmed by this court. *Johnson* v. *Waters, supra.* Thereafter, and in May, 1884, the Circuit Court appointed a receiver to take charge of all the property conveyed by Morgan. Melbourne plantation was at the time in the possession of the present defendant in error, claiming under the conveyance made by Morgan in 1858. After the appointment of the receiver the defendant in error, rather than be dispossessed, leased from him the plantation. The litigation continued, and, new parties being named, came before this court again in 1889. *Mellen* v. *Buckner, supra.* It was decided in 1891 that one undivided half of the Melbourne plantation belonged to the defendant in error, and that only the remaining half was subject to the debts of Morgan. The language of the decree was: "The said heirs are entitled to have and retain a certain portion of said Oliver J. Morgan's estate free from the claims of his creditors, as follows, to wit: two fifths of the four plantations, Albion, Wilton, Westland and Morgana, are directed and decreed to be reserved for the benefit to the heirs of Julia Morgan, deceased; and one half of Melbourne plantation is directed and decreed to be reserved for the benefit of the heirs of Oliver H. Kellam, Jr., deceased; and that the remaining interest in the said plantations is decreed and adjudged to be subject to the payment and satisfaction of the debts due to the administrator of said William Gay," etc.; and further, after providing for other matters, "but if the heirs shall not desire a severance of their portions, then the whole property to be sold, and they to receive their respective portions of the proceeds, but no allowance for buildings. Any moneys in the hands of the receiver, after paying his expenses and compensation, are to be divided between the creditors and heirs in the proportions above stated, applying the amount due to the heirs, so far as may be requisite, to the costs payable by them." Two years thereafter the interest of

Morgan in the plantation was sold in accordance with the terms of the decree. The defendant had paid to the receiver the rent of the entire plantation from 1884 up to the decree in 1891, but paid nothing thereafter. This action was commenced by the receiver in the district court of the seventh judicial district for East Carroll Parish, Louisiana, to recover one half the stipulated rent of the Melbourne plantation for the years 1891 and 1892, as well as one half of the taxes thereon for those years. The defendant answered, not questioning his liability for the matters set forth in the petition, but alleging that between 1884 and 1891 he had paid the receiver rent for the entire plantation, one half of which had been finally adjudged to be his property, and not subject to the claims of creditors of Morgan, and prayed to set off the one half of the rent wrongfully collected between 1884 and 1891 against the one half due for the years 1891 and 1892, and for a judgment over against the receiver for any surplus. The trial court sustained his defence so far as to decree a full set-off to the claims of the receiver. The Supreme Court of the State affirmed the trial court in this respect, but amended the judgment so "as to reserve the defendant's right to demand of and recover from the plaintiff the residue of the amount of the rents he has collected in excess of the sum actually due by the defendant, after a sufficiency thereof has been used to extinguish by compensation the demands of said receiver in this suit." 49 La. Ann. 668. Whereupon the receiver sued out this writ of error.

Two questions are presented: First, was the defendant entitled to set off against the rent unquestionably due for the undivided half of the plantation for 1891 and 1892, one half the amount paid by him for rent between 1884 and 1891, on the ground that it had been finally adjudged that he was the owner of one undivided half of the plantation, and therefore that the receiver had improperly collected the rent therefor; and, second, if he was entitled to such set-off, was he precluded from obtaining the benefit of it in the state courts by the fact that the receiver was an officer of the Federal court, or by any proceedings had in that court?

The contention of the receiver is that the defendant's right to one half of the plantation dates from the decree in 1891, while the defendant insists that it dates from the conveyance in 1858, and that the decree only determined a preëxisting right. We concur in the latter view. As a rule courts do not create but simply determine rights. The adjudication that the defendant was entitled to an undivided one half of the plantation was neither a donation nor an equitable transfer of property in lieu of other claims. It was a determination of a preëxisting right, and that right dates and could only date from the conveyance in 1858.

The conclusions of the Circuit Court of the United States, as expressed in an opinion and passed into a decree — a decree not appealed from, and, therefore, final between the parties — are to the same effect. Such opinion and decree appear in the record. In the opinion, which was announced after the decision of this court in 139 U. S., *supra*, it was said : "From this last opinion and decree of the Supreme Court in the matter, we are forced to conclude that the portions of lands set off and adjudged to the heirs of Julia Morgan and heirs of O. H. Kellam, Jr., were so set off and adjudged to them as the owners thereof in their own right as the heirs of Julia Morgan and O. H. Kellam, Jr., who were the heirs of Narcisse Deeson, the wife of Oliver J. Morgan, and not to them in any way as the heirs of Oliver J. Morgan or as creditors or claimants of his estate. . . . The heirs of Julia Morgan and Oliver H. Kellam, Jr., participated in the fund recovered in the original case of *Gay, Administrator,* v. *Morgan, Executor, et al.,* but the careful reading and consideration which we have given the opinions and decrees of the Supreme Court, and particularly the supplemental decree in all the cases consolidated, give us the firm impression that the court intended to hold and declare that the portions recovered by said heirs were theirs of right, and that they were to have them, not only free of the claims of creditors of the estate of Oliver J. Morgan, but free from all costs and claims except as in the several decrees adjudged, and as thereafter might be necessary in effecting partition." And in the decree it was among

other things adjudged that "so much of said decree of June 2, 1893, as the same is of record herein, as charges or attempts to charge the said John A. Buckner and Etheline Buckner as the owners of one half of Melbourne plantation, or that attempts to charge their said one half of said Melbourne plantation with lien privilege to contribute to or recuse the contribution of the sum of seven thousand three hundred and forty-seven $\frac{30}{100}$ dollars to the payment of costs, disbursements and solicitors' fees allowed by the court in and for the prosecution of the bill and action in case No. 6612 of the cases herein consolidated, be, and the same are, cancelled, abrogated, annulled and taken from said decree, and that the said John A. Buckner and Etheline Buckner be, and are, now decreed to take and hold said one half of the said Melbourne plantation allotted to them free from said charge and liability for said costs, disbursements and solicitors' fees charged against them in said decree of June 2, 1893, as contribution to the expenses of the prosecution of said cause No. 6612 and of the causes herein consolidated." Obviously, the effect of this last decree was to materially modify the terms of prior orders and decrees, and to change the relations of the defendant as the owner of one half of the Melbourne plantation to the receivership.

The provision in the decree of this court in reference to the division between the creditors and the heirs of the moneys in the hands of the receiver after paying his expenses and compensation is one evidently applicable in case of the sale of the entire property, and cannot be construed as charging against the defendants, the heirs of Mrs. Morgan, any share of the costs incurred by the creditors of Mr. Morgan in their efforts to subject his property to the payment of their debts.

Rents follow title, and the owner of the reality is the owner of the rent. So that from 1884 to 1891, and while the question of title was in dispute, the defendant was paying to the receiver rent for an undivided half of the plantation, property which was absolutely his own, and which the receiver ought not to have had possession of. The rent thus collected belonged to the defendant, and could not be taken

by creditors of Morgan or appropriated to pay the cost of their lawsuits. So it is that the receiver, having in his possession money belonging to the defendant, to wit, the rent of one half the property from 1884 to 1891, now asks a judgment which shall compel defendant to pay him a further sum. This cannot be. This is not a case in which a defendant indebted to an estate, which is insolvent and can therefore pay its creditors only a *pro rata* amount, seeks to set off a claim against the estate in absolute payment of a debt due from him to the estate, thus obtaining a full payment which no other creditor can obtain. For here one undivided half of the plantation was never the property of the estate vested in the receiver. It was wrongfully taken possession of by him. The rent therefor all the while belonged to the defendant, and the receiver holds it not as money belonging to the estate but to the defendant. To allow him to keep that money and still recover an additional sum from the defendant would be manifestly unjust.

It is said in the brief that the court first acquiring jurisdiction has a right to continue its jurisdiction to the end. We fail to see the application of this. The receiver voluntarily went into the state court, and having voluntarily gone there cannot question the right of that court to determine the controversy between himself and the defendant. A similar proposition was often affirmed in cases of bankruptcy, although by section 711, Revised Statutes, the courts of the United States are given exclusive jurisdiction "of all matters and proceedings in bankruptcy." *Mays* v. *Fritton*, 20 Wall. 414; *Winchester* v. *Heiskell*, 119 U. S. 450, and cases cited in the opinion. The same rule applies here. The question presented is not how the estate belonging to the receiver shall be administered, but what is the estate belonging to him. The two questions are entirely distinct. Further, the right to sue a receiver appointed by a Federal court without leave of the court appointing him is granted, by the act of August 13, 1888, c. 866, § 3, 25 Stat. 436. A counterclaim or set-off comes within the spirit of that act. And certainly no objection can be made to the allowance of a set-off, when as here it is

simply in harmony with the decrees of the Federal court, and in no manner questions their force or efficacy.

The jurisdiction of the state court is therefore clear, and the judgment of the Supreme Court of Louisiana is

*Affirmed.*