PUGH et al. v. LOISEL (two cases).†

In re JOSEPH WEBRE CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. January 18, 1915.)

Nos. 2658, 2663.

1. BANKRUPTCY ⟨⟩20—POSSESSION OF PROPERTY—RECEIVER.
   The possession of a bankrupt's property by a receiver appointed by the state court, whose appointment was the act of bankruptcy alleged in the petition, does not deprive the bankruptcy court of the right to the possession and control of the property.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ⟨⟩20.]

2. BANKRUPTCY ⟨⟩20—CUSTODY OF PROPERTY—FORECLOSURE OF MORTGAGE.
   Property which was in the possession of a bankrupt at the time the petition was filed against him is in the custody of the bankruptcy court from the date of the filing of the petition, and the state court cannot,

after the petition but before adjudication, make an order for the foreclosure of a mortgage against part of the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ☞20.]

3. BANKRUPTCY ☞105—ENJOINING PROCEEDINGS IN STATE COURT—DISCRETION.

A showing that the amount secured by registered mortgage as against a bankrupt's property is more than the property can be sold for does not show that the bankrupt has no equity in such property, so that the bankruptcy court abused its discretion in enjoining state foreclosure proceedings; since it does not show what amount is still due on the mortgage.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 156–158, 162; Dec. Dig. ☞105.]

4. BANKRUPTCY ☞105—ENJOINING PROCEEDINGS IN STATE COURT—APPEARANCE OF TRUSTEE.

A trustee in bankruptcy, who appeared in foreclosure proceedings in the state court for the sole purpose of questioning the jurisdiction of that court, did not thereby submit to the jurisdiction of the state court so as to be precluded from asking an injunction by the bankruptcy court against further proceedings by the state court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 156–158, 162; Dec. Dig. ☞105.]

Pardee, Circuit Judge, dissenting.

Appeal from, and Petition to Superintend and Revise Order of, the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Bankruptcy proceedings against Joseph Webre Company, Limited, in which Victor Loisel was trustee. From an order of the District Court restraining Edward N. Pugh and another from selling property of the bankrupt, under proceedings in the state court for the foreclosure of a mortgage, Edward N. Pugh and another appeal, and file a petition to superintend and revise. Judgment affirmed, and petition to superintend and revise denied.

E. N. Pugh, of Donaldsonville, La., and Charlton R. Beattie, of New Orleans, La., for appellants.

Ralph J. Schwarz, Wm. B. Le Bourgeois, Edwin T. Merrick, and Philip Gensler, Jr., all of New Orleans, La., for appellee.

Before PARDEE and WALKER, Circuit Judges, and SHEPPARD, District Judge.

WALKER, Circuit Judge. Between the dates of the filing of a petition to have the Joseph Webre Company, Limited, adjudged an involuntary bankrupt, and the adjudication in pursuance of that petition, the holder of a mortgage, which had been made by the bankrupt nearly a year before the institution of the bankruptcy proceeding, instituted in a Louisiana state court a proceeding for the enforcement of the lien created by that mortgage; that proceeding being one the sole purpose of which was the enforcement of the mortgage lien, no personal judgment against the mortgagor being sought. By an appeal and also by a petition to superintend and revise, the mortgagee brings into question the validity of an order of the court below for the is-

suance of an injunction enjoining and restraining the mortgagee and the sheriff, who had made a seizure of the mortgaged property under the proceedings for the enforcement of the mortgage lien, from selling, claiming possession of, holding, or in any wise claiming or exercising dominion or control over the property embraced in the mortgage.

The mortgagee claims the right to proceed in the state court to enforce his mortgage lien without interference by the court of bankruptcy, and complains of the action of the latter court as an unauthorized meddling with and obstruction of the exercise of the right claimed. The question presented is whether the bankruptcy court exceeded its authority in taking the action which is complained of.

[1] The record discloses nothing other than the seizure under the foreclosure proceeding that could be regarded as an obstacle to the bankruptcy court's exercise of control over the bankrupt's property. At the time the petition was filed, the property embraced in the mortgage was so situated as to be as much subject to be taken into custody by the bankruptcy court as if it had then been in the actual possession of the bankrupt, as plainly the act of bankruptcy alleged in the petition, namely, the alleged bankrupt's causing a receiver of its property to be appointed within four months prior to the filing of the petition, could not have had the effect of depriving the bankruptcy court of the right to the possession and control of the bankrupt's property. Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 546 [Comp. St. 1913, § 9587]) § 3, subd. 4; In re Hecox, 164 Fed. 823, 90 C. C. A. 627. The record does not indicate that the receiver appointed by the state court asserted any right of possession as against the trustee in bankruptcy.

[2] In the argument by which the claim made is sought to be supported much reliance is put on the rulings made in the cases of Hiscock v. Varick Bank of New York, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945, and Jones v. Springer, 226 U. S. 148, 33 Sup. Ct. 64, 57 L. Ed. 161, and especially upon certain expressions used in the course of the opinion rendered in the first mentioned of these cases. Nothing that was said by the court in making disposition of the case of Jones v. Springer indicates any departure from the propositions stated in previous decisions (Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Acme Harvester Co. v. Beekman Lum. Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208) to the effect that the filing of a petition to have one adjudged a bankrupt is a caveat to all the world, and in effect an attachment and injunction, and that property of the bankrupt which was in his possession when the petition against him was filed is to be regarded as in custodia legis from the date of the petition as against a subsequent attachment or seizure of it under process of another court. On the contrary, the court, in the opinion rendered in that case, distinctly recognized that such property was to be regarded as having been subject to the control of the bankruptcy court from the date of the petition; but it was held that where, under an attachment from another court, levied before the petition was filed in a distant state, property of the bankrupt had been, without notice of the petition, put into the hands of a receiver appointed

by the court from which the attachment issued, that court, having the actual custody of the res, had the power to preserve the subject-matter of the controversy that necessarily was incident to such conditions, and that a sale of the property under its order, on the ground that it was "of a perishable nature, and liable to be lost or diminished in value before the final adjudication of the case," within the terms of a local statute providing for a sale in such circumstances, was to be regarded, not as the exercise of a power over the property inconsistent with that acquired by the bankruptcy court as a result of the filing of the petition, but as within the authority which, from the necessity of the case, a court having the actual custody of a thing possesses to preserve that thing while in its custody. It was on this ground that it was held that the sale stood, with the result that the claim of the trustee was transferred to the proceeds, which were presumed to represent the fair value of the property and to take its place. The decision in that case by no means recognized the existence of power in the court which by its receiver took possession of property of the bankrupt after the petition against him was filed to withdraw that property from the grasp of the bankruptcy court. It simply recognized the propriety of the action taken by the court which had the actual custody of perishable property in ordering its sale for the benefit of all persons who might assert claims to it, not because that court had the right to determine to what claim the property so converted into cash should be subjected, but because the thing might have perished while in its custody, with the result of defeating the beneficial exercise of power over it by either that court or any other one that might have a superior right to its custody and administration. In that case the court, which by its receiver took possession of property of the bankrupt after the petition against him was filed, was not held to have thereby acquired any other power than that of preserving the subject of controversy while in its actual custody.

In the case of Hiscock v. Varick Bank of New York, supra, it was held that the pendency of a petition to have one adjudged a bankrupt did not invalidate a sale of personal property by his pledgee who at the time the petition was filed had both the title and possession of the subject of the sale. The court did not in that case deal with the question of the right of another court, by a seizure under process issued by it in suit brought after the petition in bankruptcy was filed, to remove beyond the reach of the bankruptcy court property, or the administration of it, of which at the time the petition was filed the bankrupt had possession and the title, though subject to a lien sought to be enforced by the suit brought in such other court. It dealt with the case of a sale by one who at the time the petition was filed, and long before that date, was in possession of the thing sold, having a title to it which was good against the bankrupt and all the world. Collier on Bankruptcy (9th Ed.) 948. It is not permissible to give to any expression used by the court in the opinion rendered in that case the effect of a decision that the existence of a valid lien on property of the bankrupt which was in his possession at the time the petition

against him was filed enables another court, in which the enforcement of that lien subsequently is sought, to withdraw the subject of the lien beyond the reach of the bankruptcy court. Many provisions of the bankruptcy statute forbid the conclusion that the right of the court of bankruptcy to control the administration of the bankrupt's estate extends only to that part of it, if any, which may happen to be unincumbered by a valid lien. We think it is apparent that the bankruptcy act, as a whole, contemplates the taking possession and control of the bankrupt's estate by the court of bankruptcy acting through its trustee. The property is taken into custody in the condition in which it is found at the time of the filing of the petition, subject to all existing valid liens upon it. The filing of the petition, of course, does not displace or disturb such liens; but neither the existence of such liens, nor attempts of the lienors to enforce them without resorting to the court of bankruptcy for that purpose, constitute obstacles to the exercise by that court of the right to take into custody the bankrupt's estate and to control the administration of it. The court is vested with ample power to protect the rights of lienholders otherwise than by permitting them to be enforced in some other court or courts. Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157; Bankruptcy Act, §§ 2, 57, 67, 69a, 70. In reference to the power of the bankruptcy court from the time of the filing of the petition, the following was said in the opinion rendered in the case of Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 306, 32 Sup. Ct. 96, 99 (56 L. Ed. 208):

"Whatever may be the limitations of the doctrine declared by this court, speaking by the late Chief Justice Fuller in Mueller v. Nugent, 184 U. S. 1, 14 [22 Sup. Ct. 269, 275 (46 L. Ed. 405)] where it is said: 'It is as true of the present law (1898) as it was of that of 1867, that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403 [25 L. Ed. 866]); and on adjudication, title to the bankrupt's property became vested in the trustee (sections 70, 21e), with actual or constructive possession, and placed in the custody of the bankruptcy court'—it is none the less certain that an attachment of the bankrupt's property after the filing of the petition and before adjudication cannot operate to remove the bankrupt's estate from the jurisdiction of the bankruptcy court for the purpose of administration under the act of Congress. It is the purpose of the Bankruptcy Law, passed in pursuance of the power of Congress to establish a uniform system of bankruptcy throughout the United States, to place the property of the bankrupt under the control of the court, wherever it is found, with a view to its equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition. It is true that under section 70a of the act of 1898 the trustee of the estate, on his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudicated a bankrupt; but there are many provisions of the law which show its purpose to hold the property of the bankrupt intact from the time of the filing of the petition, in order that it may be administered under the law if an adjudication in bankruptcy shall follow the beginning of the proceedings. Paragraph 5, § 70a, in reciting the property which vests in the trustee, says there shall vest 'property which, prior to the filing of the petition, he (the bankrupt) could by any means have transferred or which might have been levied upon and sold under judicial process against him' (the bank-

rupt). Under section 67c, attachments within four months before the filing of the petition are dissolved by the adjudication in the event of the insolvency of the bankrupt, if its enforcement would work a preference. Provision is made for the prompt taking possession of the bankrupt's property, before adjudication if necessary (section 69a). Every person is forbidden to receive any property after the filing of the petition, with intent to defeat the purposes of the act. These provisions—and others might be recited—show the policy and purpose of the Bankruptcy Act to hold the estate in the custody of the court for the benefit of creditors after the filing of the petition and until the question of adjudication is determined. To permit creditors to attach the bankrupt's property between the filing of the petition and the time of adjudication would be to encourage a race of diligence to defeat the purposes of the act and prevent the equal distribution of the estate among all creditors of the same class which is the policy of the law. The filing of the petition asserts the jurisdiction of the federal court, the issuing of its process brings the defendant into court, the selection of the trustee is to follow upon the adjudication, and thereupon the estate belonging to the bankrupt, held by him or for him, vests in the trustee. Pending the proceedings the law holds the property to abide the decision of the court upon the question of adjudication as effectively as if an attachment had been issued. and prevents creditors from defeating the purposes of the law by bringing separate attachment suits which would virtually amount to preferences in favor of such creditors."

What has just been quoted was said in support of the conclusion, reached in that case, that the right of the bankruptcy court to the custody of property of the bankrupt, which was in its possession when the petition was filed, prevailed over a claim made in behalf of a state court from which an attachment issued after the petition was filed but before there was an adjudication upon it. So much effect was there given to the filing of the petition, though under the law which was applicable to that case the trustee in bankruptcy took only such title as the bankrupt had, and the bankruptcy proceedings did not operate as a judicial seizure which conferred new and greater rights on the creditors of the bankrupt or on the trustee as their representative. The case at bar arose after the bankruptcy act had been changed by the amendment of its forty-seventh section by the act of 1910, which added to that section the following provision:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien, by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." Collier on Bankruptcy (9th Ed.) 650.

This change of the law has the effect of making the filing of a petition to have one adjudged a bankrupt the institution of a proceeding having for one of its objects the vesting in the trustee to be appointed therein, as to all property in the custody or coming into the custody of the bankruptcy court, all the rights, remedies, and powers of a creditor having a lien by legal or equitable proceedings thereon, and also the vesting in such trustee, as to all property not in the custody of the bankruptcy court, of all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. In other words, the filing of a petition to have one adjudged

a bankrupt is now in effect the institution of a suit for the establishment and enforcement of newly created statutory liens upon the estate of the alleged bankrupt. The creation and enforcement of such liens are not at all incompatible with the due recognition and enforcement in the same proceeding of previously created and superior liens upon the whole or any part of the bankrupt's estate. It seems plain that Congress, while thus making express provision for substantial additions to the powers of the bankruptcy court in the matter of its custody and control of the bankrupt's estate and enlarging the means available to that court for retaining its hold upon and subjecting such estate, could not have contemplated that the exercise by that court of the powers so conferred upon it could be permitted to be thwarted by a superior lienholder's resort to another tribunal for the enforcement of his lien, with the result of removing the subject of the statutory liens so provided for beyond the control of the court expressly vested with authority to establish and enforce them. In many instances the power of the bankruptcy court in the administration of the bankrupt's estate would fall far short of being paramount and exclusive—as the whole tenor of the bankruptcy act shows that it was intended to be (Cameron v. United States, 231 U. S. 710, 34 Sup. Ct. 244, 58 L. Ed. 448; Lazarus, Michel & Lazarus v. Prentice, 234 U. S. 263, 266, 34 Sup. Ct. 851, 58 L. Ed. 1305)—if, by a stipulation in a contract made by the bankrupt at any time before the petition against him was filed, he could confer upon another tribunal the right, without regard to the pendency of bankruptcy proceedings against him, to draw to itself the custody and administration of the whole or any part of his estate for the enforcement of a contract lien thereon, or for any other purpose. A debtor cannot, by a contract with one or more of his creditors, render unavailable or ineffective remedies, which, in the event of his insolvency, the Bankruptcy Act provides for the common benefit of all his creditors.

It may be that already more than enough has been said to indicate the grounds which it is believed support the conclusion reached, that the court below did not exceed its power in taking the action which is complained of.

[3] It is suggested that, even if the court below had the power to take the action complained of, it abused its discretion in doing so because it was made to appear that the bankrupt's equity in the mortgaged property was of no value. We do not think that the record conclusively shows that such was the fact. What is relied on in this connection is the statement in Edward N. Pugh's answer to the rule to show cause:

"That said property will not sell at the outside for more than $30,000, and the mortgages bearing and covering the same are over $50,000, as appears by the certificate of mortgages hereto annexed."

The certificate so referred to discloses merely what mortgages are of record. It does not show what remains due or owing on the debts secured by the mortgages, or that the amount of the secured indebtedness exceeds the value of the mortgaged property. The record in the instant case contains an illustration of the inconclusiveness of

the showing made by such a certificate so far as the amount of indebtedness secured by mortgages mentioned is concerned. The certificate shows that the mortgage sought to be foreclosed secured an indebtedness of $25,000; but it appears from the statement of the mortgagee that the debt actually due to him was $20,000 and interest thereon. The certificate cannot be accepted as conclusive proof of what, if any, actual indebtedness was secured by the other mortgages.

[4] The contention was made in argument that the trustee in bankruptcy, by his appearance and participation in the suit brought in the state court, submitted himself to the jurisdiction of that court and estopped himself from later applying to the court below for relief. This contention is untenable. The trustee's appearance in the state court plainly was for the sole purpose of questioning its right to exercise the jurisdiction which was claimed in its behalf. He is not to be held to have voluntarily submitted himself to the jurisdiction of that court by protesting against its exercise of jurisdiction. Big Vein Coal Co. v. Read, 229 U. S. 31, 33 Sup. Ct. 694, 57 L. Ed. 1053.

The judgment appealed from is affirmed, and the prayer of the petition to superintend and revise is denied.

PARDEE, Circuit Judge (dissenting). The case shows:

(1) On January 9, 1914, in the matter entitled "The Receivership of Joseph Webre Company, Limited," being No. 2444 of the docket of the Twenty-Seventh judicial district court for the parish of St. James, that the court took jurisdiction and through proper orders in the appointment of a receiver took into custody and possession all the property of the Joseph Webre Company, Limited, including the res involved in this case.

(2) On the 13th day of February, 1914, a petition in involuntary bankruptcy against the Joseph Webre Company, Limited, was filed in the United States District Court, Eastern District of Louisiana, but no receiver or other possession of property was asked for or ordered.

(3) That on the 20th of February, 1914, Edward N. Pugh, a citizen of the United States, obtained from the Twenty-Seventh judicial district court in and for the parish of St. James, La., an order of seizure and sale against the property mortgaged by Joseph Webre Company, Limited, on the 28th of February, 1913, under an authentic act of mortgage importing confession of judgment, with the pact de non alienando, duly recorded in the parish where the property is situated, and by this order the custody of the property in the state court was continued and confirmed.

(4) That under said writ the sheriff of the parish of St. James gave due notice to pay, and on the 26th of February, 1914, seized and took into his actual possession for the state court the mortgaged property duly described in said act of mortgage.

(5) That said sheriff under said writ of said state court, and to pay and satisfy the same, duly advertised said mortgaged property to be sold at public auction on April 18, 1914.

(6) That on the 6th of March, 1914, said Joseph Webre Company, Limited, was adjudicated a bankrupt.

(7) That on the 2d of April, 1914, Victor Loisel, trustee of said bankrupt, took a rule sua sponte against said sheriff J. B. Dornier, and against said Edward N. Pugh, seizing creditor, in said Twenty-Seventh judicial district court in and for the parish of St. James, asking said court to recall its writ issued in the matter of said Edward N. Pugh v. Joseph Webre Company, Limited, No. 2873 of the docket of said court, and to relegate the entire matter to the United States District Court in Bankruptcy.

(8) That issue was joined in said rule thus taken by said trustee in said state Court, tried contradictorily, argument had, and judgment rendered on April 7, 1914, by said state court refusing to recall its writ.

(9) That from said judgment thus rendered by said state court said trustee obtained an order of appeal to the Supreme Court of Louisiana, suspensive and devolutive.

(10) That on the 15th day of April, 1914, said trustee obtained an order from the District Court, Eastern District of Louisiana, ordering said sheriff and said Edward N. Pugh to show cause on the 18th of April, 1914, why an injunction should not issue restraining and enjoining them and each of them from selling, claiming possession, or control over said property, and from interfering or disturbing said trustee in the possession of the assets of the said bankrupt, and further ordering that until the termination of this order to show cause said sheriff and said Edward N. Pugh are stayed and enjoined from selling or disposing of the said property or otherwise interfering or disturbing the said trustee in possession of the same.

(11) That issue was duly joined on said rule to show cause, and it was shown that the sheriff of the parish of St. James, acting under orders of the Twenty-Seventh judicial district court in and for the parish of St. James, La., did on the 26th day of February, 1914, take actual and corporeal possession of said mortgaged property, and was in actual possession of the same on the day of the trial of said order to show cause why an injunction should not issue, and had retained possession thereof from the 26th of February, 1914.

(12) That as appears by the sworn statement of Edward N. Pugh, and the same is not controverted, the mortgaged property in controversy will not sell for more than $30,000, and the valid mortgages thereon exceed the sum of $50,000. The certificate of mortgages in the record shows registered mortgages exceeding $55,000.

(13) That hearing was had on the pleadings and the exhibits thereto, no evidence being taken, and the District Court entered a decree ordering the issuance of the injunction applied for; and this order has been brought to this court for review.

On this showing, I conclude:

1. That as the property involved was taken into the possession and custody of the state court before any proceedings were instituted in the court of bankruptcy, and the custody was retained under the executory proceeding filed by E. N. Pugh, the trustee in bankruptcy, if he desired or claimed possession, was well advised to seek relief as he did by applying to the state court setting up his alleged title, and after

such application and the decision of that tribunal he ought not to be heard in questioning the same otherwise than by appellate proceedings. Grant v. Buckner, 172 U. S. 232, 238, 19 Sup. Ct. 163, 43 L. Ed. 430; Winchester v. Heiskell, 119 U. S. 450, 7 Sup. Ct. 281, 30 L. Ed. 462, and cases there cited.

2. That as the mortgage on which the executory proceedings in the state court were based was granted nearly one year before the bankruptcy proceedings were instituted and imported a confession of judgment and contained a nonalienation pact, it is a valid lien with an executory remedy attached under the laws of the state of Louisiana not subject to be attacked as an unlawful preference under, nor be considered as impaired or affected by, the proceedings in bankruptcy. See section 67d of the Bankruptcy Law. And clearly the lienor's right would be impaired if his remedy under the state law should be taken away.

Hiscock v. Varick Bank of New York, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945, is decidedly in point. In one of the syllabi it is announced that:

"The bankruptcy act does not deprive a lienor of any remedy with which he is vested by the state law."

And at page 37 of 206 U. S., at page 684 of 27 Sup. Ct. (51 L. Ed. 945), the court says:

"The contracts of pledge were made, executed, and to be performed in the state of New York, and the rights of the parties were governed by the law of that state. No preference under the bankruptcy act was alleged or proved, nor was there any allegation or proof that the pledge of the securities was in fraud of the rights of the creditors or trustee. The questions of the extent and validity of the pledge were local questions, and the decisions of the courts of New York are to be followed by this court."

Acme Harvester Co. v. Beekman, 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208, does not appear to me as applicable to the facts in this case, nor in any wise conflict with my views herein.

3. As the property involved was before the proceedings in bankruptcy were instituted and is now in the custody of the state court, and, particularly, as the case shows no fraud nor any race among creditors for preference nor any equity to be administered by the trustee in bankruptcy, the injunction of the District Court was improvident, and to insist upon and enforce the same can only result in delay in settling the bankruptcy case, or in a conflict of jurisdiction between the bankruptcy court and the state court, which is not only to be deprecated, but should by all means be prevented on general grounds of comity.

In my opinion the order of the District Court should be reversed, with instructions to the trustee to seek his remedy in the state courts, whose jurisdiction he invoked, and, if there denied, he can go direct to the Supreme Court of the United States.