## COHEN v. NIXON & WRIGHT et al.

### In re BUXTON.

(District Court, S. D. Georgia. September 30, 1916.)

1. BANKRUPTCY ⬥288(1)—JURISDICTION OF COURT—ADVERSE CLAIMS.

After property of a bankrupt, which was in his possession at the time of his bankruptcy, has come within the jurisdiction and custody of the bankruptcy court by virtue of the filing of the petition and the subsequent adjudication, a creditor holding a lien or security deed thereon cannot acquire title to or possession of the property, so as to become an adverse claimant and exclude the jurisdiction of the bankruptcy court to determine his rights by a summary proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. ⬥288(1).]

2. BANKRUPTCY ⬥214—LIENS—ENFORCEMENT AFTER BANKRUPTCY.

A creditor, holding a security deed on real estate of a bankrupt, which under the law of Georgia leaves the debtor in possession, but gives the creditor the right to advertise and sell the property on default, cannot exercise such right after the property has passed into possession of the trustee, without the permission of the bankruptcy court, and such a sale

while the property is in custodia legis is void, and does not divest the title of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 320, 324–327, 343, 344; Dec. Dig. ☞214.]

In Bankruptcy. In the matter of W. R. Buxton, bankrupt. On petition of G. M. Cohen, trustee, against Nixon & Wright and another. On review of decision of referee. Affirmed.

In April, 1911, W. R. Buxton, of Burke county, Ga., borrowed $1,600 from Nixon & Wright, and to secure payment of same gave to them a deed to a tract of land containing 500 acres in Burke county and a house and lot in the town of Girard, in said county. The deed contained a power of sale authorizing said Nixon & Wright, in default of the payment of said indebtedness, to sell said property at public outcry before the courthouse door of Burke county, after advertising the sale once a week for four weeks, and to execute deeds to the purchaser at such sale. In March, 1912, Buxton was duly adjudicated a bankrupt, and he scheduled said two pieces of property and also the security deed to Nixon & Wright. G. M. Cohen was duly elected and qualified as trustee. The bankrupt was in possession of both pieces of property at the time of the filing of his petition and of his adjudication. The 500-acre tract of land contained some land which was in cultivation, for which the bankrupt had the note of the tenant. The bankrupt also rented out the town house and lot. The trustee did not actually go on the 500-acre tract of land, but he took possession of the rent note and sold same, together with the other notes and accounts of the bankrupt's estate. He did, however, go upon the town lot, and notified the tenant in possession that he, the trustee, was in possession. He paid insurance on the house, and collected $22.36 rent on same. The trustee, on March 28, 1912, recorded in the office of the clerk of the superior court of Burke county a certified copy of the order adjudicating said Buxton a bankrupt, and on the 14th of June, 1912, he recorded in the same office a certified copy of the order approving his bond as such trustee. Subsequently, in October, 1912, Nixon & Wright, in pursuance of the power of sale contained in the deed from the bankrupt, duly sold said two pieces of property at public outcry, after having advertised same in accordance with the power contained in the deed. The 500-acre tract was bid in by Nixon & Wright for $750, and the house and lot was bid in by Mrs. Mary R. Heath for $350. The trustee had no notice of this sale; but Nixon & Wright, for some time before exercising the power of sale, had full knowledge of the fact that Buxton had gone into bankruptcy.

Three or four months after the property was sold, the trustee learned of the sale which had been made of the property by Nixon & Wright under their deed, and he thereupon filed his petition against Nixon & Wright and against Mrs. Mary R. Heath, alleging the above-stated facts, and also alleging that the property involved was worth the sum of $3,000, and that there was an equity in same in the bankrupt's estate, and praying that the deeds which had been made to the purchasers at the above-stated sale should be surrendered up and canceled, and that said two pieces of property should be restored to his possession. The defendants appeared, and filed their demurrer to said petition, in which they averred that the "referee's court had no jurisdiction to institute proceedings in behalf of a trustee in bankruptcy to annul a valid legal proceeding brought in a state court by a creditor to enforce a valid lien, which had accrued more than four months prior to the filing of the petition in bankruptcy," and that the petition showed on its face that Nixon & Wright had such a valid lien on the property in question, given about a year prior to the adjudication of the bankrupt, and that neither their lien nor their remedy to enforce same was affected by bankruptcy, and that, therefore, the sale of the property under the power contained in the deed was valid, and that complainant had no right to any relief. They also filed an answer in which they made the same averments, and also claimed that the power of sale in the deed was fairly exercised, and that the sale was made after due

advertisement, and that the property brought all that it was worth, and that they had the right to make the sale of the property under the power contained in the deed, and that this sale passed good title to the purchasers.

The referee heard the case, and evidence was taken in behalf of the respective parties. At the conclusion of the hearing the referee rendered an opinion, holding that the bankrupt was in possession of the property in controversy at the time of his adjudication, and that this possession passed to the trustee, and was in the trustee at the time of the sale by Nixon & Wright under their security deed, and that inasmuch as they exercised this power of sale with knowledge of the bankruptcy of W. R. Buxton, and without the permission of the bankruptcy court, such sale was illegal, and the deeds made in pursuance thereof void. The referee thereupon entered an order directing Nixon & Wright and Mrs. Mary R. Heath to surrender up and cancel the deeds which they respectively held to the tracts in question, and to restore said tracts of land to the trustee. Defendants duly filed a petition to review this order of the referee.

Geo. W. Owens and F. T. Saussy, both of Savannah, Ga., for trustee.

C. H. & R. S. Cohen, of Augusta, Ga., for defendants.

LAMBDIN, District Judge (after stating the facts as above). This matter is before me upon a petition to review the above-stated order of the referee. From the foregoing statement of facts it appears that, more than four months before W. R. Buxton went into bankruptcy, he executed to Nixon & Wright a deed to a 500-acre tract of land and a house and lot in Burke county, Ga., where he lived, for the purpose of securing a loan of $1,600, about which there seems to be no question. He made default in the payment of this debt, and thereafter went into bankruptcy, being at that time in possession by tenants of the land described in the security deed to Nixon & Wright. The complainant was duly appointed trustee, and, as set out in the foregoing statement, he never entered upon the 500-acre tract of land, but sold the rent note which the bankrupt had taken for same. He went to the town house and lot, however, and notified the tenant that he was in possession as trustee of the bankrupt, and he insured the house and collected rents on same. About eight months after the appointment of the trustee, Nixon & Wright duly exercised the power of sale contained in their security deed, and sold at public outcry the tracts of land in question, and themselves became the purchasers of the 500-acre tract of land at the price of $750, and the house and lot was bought by the defendant Mrs. Mary R. Heath for $350. The trustee knew nothing of this sale until several months afterwards; but Nixon & Wright had full knowledge of the fact that W. R. Buxton had been adjudged a bankrupt for some months prior thereto. As required by section 21e of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 551 [Comp. St. 1913, § 9605]), the trustee several months before the sale duly filed and recorded in the office of the clerk of the superior court of Burke county a certified copy of the order approving his bond as trustee of the bankrupt, and also recorded a certified copy of the order of adjudication. The question here is whether the sale made by Nixon & Wright under the security deed held by them after their debtor had gone into bankruptcy, and which was made without the knowledge or consent of the bankruptcy court, was valid or not.

[1] 1. At the time of the filing of the petition in bankruptcy, and of the adjudication, the bankrupt, as above stated, was in possession of the real estate in controversy. Prior to that time, however, he had conveyed said property to the defendants Nixon & Wright for the purpose of securing an indebtedness, such conveyance being known under the Georgia law as a security deed, the effect of which was to vest the legal title to said property in Nixon & Wright for the purpose aforesaid. Inasmuch as in Georgia a mortgage does not pass title, but only creates a lien, being in that respect different from a mortgage at common law, the form of security on real estate generally adopted by creditors in this state is a security deed, because same is more effectual as security for an indebtedness, on account of the fact that it cuts out the right of the debtor's wife to dower and a year's support, in the event of the death of the debtor before the payment of the debt. However, the grantor retains possession, and an equity of redemption or beneficial interest still remains in the debtor, which is capable of being transferred by him, and therefore, under section 70a (5) of the Bankruptcy Act (Comp. St. 1913, § 9654), by operation of law such equity or beneficial interest is vested in the trustee. "The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition." Acme Harvester Co. v. Beekman Lbr. Co., 222 U. S. 301, 32 Sup. Ct. 96, 56 L. Ed. 208, 27 Am. Bankr. Rep. 262.

Defendants do not by their demurrer clearly make the point that they could not be summarily proceeded against; yet I think that the summary proceeding in this case was correctly upheld by the referee. After property of the bankrupt, which is in his possession at the time of his bankruptcy, has come within the jurisdiction and custody of the bankruptcy court by virtue of the filing of the petition in bankruptcy and his subsequent adjudication, a creditor holding a lien or security deed cannot, in my opinion, thereafter acquire title to the property or the possession thereof, so as thereby to become an adverse claimant, so that his rights, if any, so acquired may not be inquired into and determined by a summary proceeding. In re Epstein (Cir. Ct. of Appeals, 8th Cir.) 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465, 19 Am. Bankr. Rep. 89.

[2] 2. On the merits of the case, the court is of the opinion that Nixon & Wright had no right to exercise the power of sale contained in their security deed after their debtor had gone into bankruptcy, without the permission of the bankruptcy court. This question is of grave importance to the proper administration of estates in bankruptcy. It is true that, under section 67d of the Bankruptcy Act (Comp. St. 1913, § 9651), valid liens are protected and preserved in bankruptcy. Yet the bankruptcy law is paramount, and, while such liens are preserved, the holder of a mortgage or a security deed (as in this case) takes his security subject to the chance that proceedings in bankruptcy may be instituted, and that the property held by him as security may be subject to become administered by the bankruptcy court. The right of the bankruptcy court to administer such property or the equity or estate of the bankrupt therein

is paramount, and while the bankruptcy court will protect valid liens, yet it has the abstract legal right to administer the property. Any other view would seriously obstruct and impede the proper administration of the estate of the bankrupt. As stated in the opinion of Circuit Judge Gilbert, speaking for the United States Circuit Court of Appeals of the Ninth Circuit in Re Jersey Island Packing Company, 138 Fed. 625, 71 C. C. A. 75, 2 L. R. A. (N. S.) 560, 14 Am. Bankr. Rep. 689:

"It is true that the Bankruptcy Act provides that liens such as the lienholders had under the trust deeds in this case shall not be affected by bankruptcy, but that is far from saying that such lienholders may, after the commencement of proceedings in bankruptcy against the debtor, proceed to enforce their liens or contracts in the manner prescribed in the instruments which create them; and this is true whether such lien is an ordinary mortgage, or a deed of trust with provision for a strict foreclosure by a notice and sale. The provision of the Bankruptcy Act that such a lien shall not be affected by the bankruptcy proceedings has reference only to the validity of the lienholder's contract. It does not have reference to his remedy to enforce his right. The remedy may be altered without impairing the obligation of his contract, so long as an equally efficient and adequate remedy is substituted. Every one who takes a mortgage * * * takes it subject to the contingency that proceedings in bankruptcy against his mortgagor may deprive him of the specific remedy which is provided for in his contract."

This conclusion follows from the well-settled doctrine that from the filing of the petition in bankruptcy the estate of the bankrupt is in custodia legis—is constructively in the custody of the bankruptcy court. This principle is clearly and authoritatively stated by the Supreme Court of the United States in the case of Acme Harvester Company v. Beekman Lumber Company, 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208, as follows:

"Whatever may be the limitations of the doctrine declared by this court, speaking by the late Chief Justice Fuller, in Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 275, 46 L. Ed. 405, where it is said: 'It is as true of the present law (1898) as it was of that of 1867, that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866), and on adjudication title to the bankrupt's property became vested in the trustee (sections 70, 21e), with actual or constructive possession, and placed in the custody of the bankruptcy court'—it is none the less certain that an attachment of the bankrupt's property after the filing of the petition and before adjudication cannot operate to remove the bankrupt's estate from the jurisdiction of the bankruptcy court for the purpose of administration under the act of Congress. It is the purpose of the Bankruptcy Law, passed in pursuance of the power of Congress to establish a uniform system of bankruptcy throughout the United States, to place the property of the bankrupt under the control of the court, wherever it is found, with a view to its equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition. * * * The filing of the petition asserts the jurisdiction of the federal court, the issuing of its process brings the defendant into court, the selection of the trustee is to follow upon the adjudication, and thereupon the estate belonging to the bankrupt, held by him or for him, vests in the trustee. Pending the proceedings the law holds the property to abide the decision of the court upon the question of adjudication as effectively as if an

attachment had been issued, and prevents creditors from . defeating the purposes of the law by bringing separate attachment suits which would virtually amount to preferences in favor of such creditors."

Indeed, as stated by the Supreme Court of the United States in the case of Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322, where property which was in the possession of a receiver had been sold under execution:

"When a receiver has been appointed, his possession is that of the court, and any attempt to disturb it, without the leave of the court first obtained, will be a contempt on the part of the person making it. * * * And the individuals having such prior interest (in such property) must, if they desire to avail themeselves of them, apply to the court either for liberty to bring ejectment, or to be/examined pro interesse suo; and this, though their right to the possession is clear."

See, also, Murphy v. John Hofman Company, 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; Hitz v. Jenks, 185 U. S. 155, at pages 165, 166, 167, 22 Sup. Ct. 598, 46 L. Ed. 851; Pugh et al. v. Loisel (C. C. A., 5th Cir.) 219 Fed. 417, 135 C. C. A. 221; Geo. B. Matthews & Sons et al. v. Jos. Webre Co. (D. C.) 213 Fed. 396.

A similar question to the one here involved was ruled upon by the Circuit Court of Appeals of the Eighth Circuit in the case of In re Epstein, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465, 19 Am. Bankr. Rep. 89, where the facts were as follows: Before the bankruptcy proceedings were filed, certain real estate of the bankrupt had been sold for taxes, but the title and the possession remained with the bankrupt. After the lapse of the three years designated in the redemption statute, and while the property was still in the custody of the court of bankruptcy as a part of the bankrupt's estate, the holder of the tax sale certificate, without the leave of the bankruptcy court, applied to the county treasurer and obtained a tax deed to the property. Thereafter the trustee, learning of the sale and deed, tendered to the claimant thereunder the amount for which the property had been sold, with interest thereon, etc., and demanded a surrender of the tax title. The tender and request were refused, and upon the trustee's petition the claimant was ordered to show cause why the deed should not be set aside. The claimant contended that his right could not be adjudicated in a summary proceeding, and also that he had obtained good title to the property. The Circuit Court of Appeals decided both these questions against the claimant, and Judge Van Devanter, Circuit Judge, speaking for the court, said:

"The question of the merits must also, upon authority, be ruled in favor of the trustee [citing several cases]. We do not mean that property in the course of administration under the Bankruptcy Act is exempt from taxation, or freed from tax liens or claims theretofore fastened upon it, * * * but that it is in custodia legis, and that any act interfering with the court's possession, or with its power of control and disposal, and done without its sanction, is void."

Almost the identical question here involved was passed upon by the District Court of Texas in Re Hasie, 206 Fed. 789, where that court held:

"That a sale [under the power of sale contained in a trust deed] after the bankruptcy of the grantor and while the property is in the possession of his

trustee as a part of the estate, without the consent of the bankruptcy court, is void, and does not divest the title of the trustee in bankruptcy."

The reasoning of the court in that case is peculiarly applicable to the facts involved here, and the principle there ruled, follows inevitably from the doctrine announced by the Supreme Court of the United States in the Acme Harvester Company Case, supra, that the estate of the bankrupt is in custodia legis from the time of the filing of the petition, and that the administration of such estate should not be interfered with.

See, also, the case of William L. Dayton v. A. H. Stanard, Treas., 241 U. S. 588, 36 Sup. Ct. 695, 60 L. Ed. 1190, decided June 12, 1916, by the Supreme Court of the United States, in which the court used this language:

"This is a controversy growing out of the sale for taxes and special assessments of divers tracts of real property belonging to a bankrupt estate then in the course of administration in a court of bankruptcy. The property was in custodia legis and was sold without leave of court. Because of this the court held the sales invalid, and entered a decree canceling the certificates of purchase, and enjoining the county treasurer from issuing tax deeds thereon. Thus far there is no room to complain [citing authorities]."

See, also, the case of Fairbanks Steam Shovel Co. v. Wills, Trustee, 240 U. S. 642, 36 Sup. Ct. 466, 60 L. Ed. 841, 36 Am. Bankr. Rep. 754; Fulghum v. Williams Co., 114 Ga. 643, 40 S. E. 695, 1 L. R. A. (N. S.) 1055, 88 Am. St. Rep. 48; Corbett v. Riddle (C. C. A., 4th Cir.) 209 Fed. 811, 126 C. C. A. 535.

The case here is quite different from cases cited by counsel for defendants, in which the state courts had first obtained possession of the property by the foreclosure of a valid lien, or by receivership proceeding, prior to the filing of the petition in bankruptcy. The principle ruled in such cases is based on the comity existing between the courts, and upon the doctrine that the first court taking jurisdiction of the property should be allowed to retain such jurisdiction. However, even in such cases the jurisdiction of the bankruptcy court is paramount, and such proceedings in state courts may be stayed, if necessary to the proper administration of the estate of the bankrupt. However, in the case at bar the comity of courts is not involved, as Nixon & Wright did not attempt to foreclose their security deed in the state court, but endeavored themselves to realize upon their security by public sale, not under the supervision of any court.

The court does not think that the principle ruled in the case of Hiscock v. Varick Bank, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945, cited by counsel for defendants, is applicable here. In the Hiscock Case certain insurance policies were pledged to the bank, and the court found that the bank had both title to and possession of the policies for more than two years before the filing of the petition. In the case here the possession of the property and a beneficial interest in same were in the bankrupt when the petition was filed, and, such being the case, said property at once came into the custody of the court, and it would seriously impair the administration of bankruptcy estates if such custody were to be allowed to be interfered with.

It is probable that the fact that the estate of the bankrupt was be-

ing administered by the bankruptcy court had the effect of chilling the bidding at the sale made by Nixon & Wright, and that therefore the property, did not bring its full value. In the opinion of the court, not only does the bankruptcy law itself, but public policy as well, require that the court shall set aside such a transaction as the one under consideration, although in this case defendants appear to have acted in good faith, and not to have been guilty of fraud; otherwise, the bankruptcy law would be set at naught, and the door of fraud opened, and the proper administration of estates in bankruptcy seriously impeded.

An order will be taken directing that the referee shall find the amount due by the bankrupt to Nixon & Wright upon the papers which they held against him, and that he take into account the rents, issues, and profits, etc., by the defendants, and the amounts necessarily expended by them in the way of taxes and other charges for the preservation of the property, and that thereupon the entire amount due Nixon & Wright be established by an order of the referee, and that the trustee take possession of the two pieces of property involved and bring same to sale at as early a date as possible, and that if said two pieces of property together do not bring as much as the amount so found by the referee to be due to Nixon & Wright, then the deeds held by the defendants will be confirmed, and the trustee directed to quitclaim to the defendants all his equity, title, and interest in said tracts of land to said defendants, but that if said two pieces of property, which shall be sold separately, together bring more than the amount found to be due to Nixon & Wright, the deeds held by Nixon & Wright and Mrs. Heath to said tracts of land shall be surrendered up and canceled, and the trustee in such event is directed to execute title to said tracts of land to the purchaser or purchasers at the sale so made by the trustee.