(No. 13537.—Judgment affirmed.)

ELVA M. BOULTER, Appellee, *vs.* THE JOLIET NATIONAL
BANK, Appellant.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

1. BILLS AND NOTES—*giving of note in renewal does not satisfy original note unless it is so accepted.* The giving of a promissory note in renewal of another does not, of itself, operate as a satisfaction of the original note unless it is made and accepted for such purpose, and whether it was or not is a question of fact which depends upon the intention of the parties and is for the determination of a jury.

2. TROVER—*when trover may be maintained to recover stock pledged to secure note.* Where one of two parties to a promissory note pledges her certificate of stock, indorsed in blank, to secure the note, the pledge creates a lien for the amount of the note until the debt is paid or discharged, but if the other maker, after maturity of the note, makes a part payment and gives his individual note for the balance and again pledges the stock, making the untruthful statement that he owns it, the owner of the stock may demand possession of the same and sue in trover to recover it.

3. SAME—*interest should be computed from date of demand and refusal.* In an action of trover to recover a certificate of stock which was pledged to secure a promissory note from which the maker has been released, interest should be computed from the date of the demand and refusal which constituted the conversion, and not from the date when the stock was sold at public sale by the pledgee.

4. SAME—*instruction should not submit to jury the legal question whether a transaction created an agency.* In an action to recover a certificate of stock which was pledged to secure a promissory note, an instruction should not submit to the jury the legal question whether one of the makers of the note, by joining with the party who owned the stock, became an agent to use the certificate as further collateral for his own note subsequently given to satisfy the original.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the County Court of Will county; the Hon. GEO. J. COWING, Judge, presiding.

GARNSEY, WOOD & LENNON, (JOHN H. GARNSEY, and EDWARD C. HALL, of counsel,) for appellant.

Bulkley, More & Tallmadge, and Murphy & Anderson, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

In an action of trover against the Joliet National Bank, in the county court of Will county, Elva M. Boulter recovered a judgment for $550, which the Appellate Court affirmed. A certificate of importance was granted and the bank has appealed.

Elva M. Boulter was a telephone operator, living with her father, John Boulter, and her mother and brother, in Chicago. She owned five shares of stock in the Gerlach-Barklow Company of Joliet, of the par value of $100 each. She signed a note with her father for $300, dated November 23, 1914, payable to the appellant three months after date, which recited that the makers of the note "have deposited, delivered and assigned to said bank the following named securities: One certificate No. 252 for five shares of the preferred capital stock of the Gerlach-Barklow Company of Joliet, Ill., of which Elva M. Boulter is the owner." At the same time she indorsed the certificate of stock in blank and gave it to her father. He was a reporter for the Bradstreet commercial agency and a frequent caller at the Joliet National Bank, where he had a checking account. The bank discounted the note for him. When it became due it was not paid and remained overdue for a year. On February 23, 1916, he paid $100 on the note and gave his individual note for the remainder, $200, due three months after date, with seven per cent interest after due, and at the same time again pledged the stock as collateral as in the former note, saying that he was then the owner of the stock. The bank canceled the original note by stamping on its face, "Paid Feb. 23, 1916." Boulter showed the canceled note to his daughter and told her he had paid it. She asked him to bring the stock certificate to her and he told her he would, but he did not. She knew it was at

the Joliet National Bank but did not know that the bank was holding it as security, for her father told her he had left it there for safe-keeping. On April 13, 1916, he gave the bank another note for $100, due in three months, for which he also pledged the stock. There was no communication between the appellant and the appellee until the receipt of a letter from the bank dated January 16, 1917, by the appellee's mother, addressed to Emma Boulter, asking her if she had heard from Boulter yet. The appellee answered this letter on January 28, saying that nothing had been heard from Boulter since Christmas day, asking the return of the stock certificate belonging to her which he had left in the care of the bank, and inclosing postage. The bank replied saying that it held the stock as collateral for money furnished to Boulter, upon payment of which it would be glad to return the certificate. The next day the appellee wrote demanding the return of the stock without delay, but the bank refused to return it and on April 21, 1917, sold it at public sale for $500.

The pledge of the stock created a lien for the amount of the $300 note until the debt was paid or the lien was otherwise discharged. The giving of a promissory note in renewal of another does not, of itself, operate as a satisfaction of the original note. Whether it does so or not is a question of fact for the determination of a jury and depends upon the intention of the parties. If it is made and accepted for such purpose the former note is satisfied. *Belleville Savings Bank* v. *Bornman,* 124 Ill. 200; *Jansen* v. *Grimshaw,* 125 id. 468.

It is insisted that the court erred in instructing the jury that "if you believe from the evidence that it was the intention of the parties to the original note introduced in evidence in this case that the cancellation of such note and the taking of a new note by the bank signed by John Boulter was intended as a release and discharge of Elva M. Boulter from her obligation on the original note, then you should

find the issues in this case for the plaintiff." Section 118 of the Negotiable Instrument act provides that a negotiable instrument is discharged by the intentional cancellation thereof by the holder. In *Fairbank* v. *Merchants' Nat. Bank,* 132 Ill. 120, it was held that the mere renewal of notes for which shares of stock had been pledged would not release the pledge of the stock, yet the fact that in addition to the making of a new note and the surrender of the old a new pledge of the stock and a new contract of pledge were made and substituted for the old afforded *prima facie* evidence that the old note was paid and the collateral security released. There was evidence at least tending to show an intention to release Elva M. Boulter from her obligation on the original note, which justified the giving of the instruction.

It is argued, however, that even if it was the intention to release the appellee from the note, the extension of a note does not always release the collateral security, and that this was an element in the case which should have been considered by the jury. There is no theory on which it can be said that the appellee would be released from liability on the note and her stock which is pledged as security held. The only contract by which any lien on the stock was created was the note for $300,—the same contract which created the personal liability of the appellee. If that contract was discharged, all liability, whether of the appellee or of the property pledged as security, was gone. The contract of the appellee and the contract by which her stock was bound were the same. There is no difference as to the personal liability of the appellee on the note and the lien on the stock for its payment. *Price* v. *Dime Savings Bank,* 124 Ill. 317.

The instruction in regard to interest is erroneous, but the error is against the appellee. It directs the jury, in case of a verdict for the plaintiff, to compute interest from the date of the sale of the stock. The rule is that under the

law she was entitled to interest from the time of the conversion, and the evidence of a demand of the stock and its refusal in January was evidence of a conversion of the stock three months before the sale. The appellant has no cause, therefore, to complain of this instruction.

The court refused an instruction asked by the appellant in regard to the meaning of conversion and the evidence by which it may be proved. It was not error to refuse the instruction. There was no dispute in the evidence in regard to the conversion. The only question was as to the effect of the giving of the new note.

Another instruction which was refused and of which complaint is made submitted to the jury the legal question whether the appellee, by permitting John Boulter to negotiate a loan and turning over to him security to be used as collateral, created him an agent, and if, by permitting the collateral security to remain in the possession of the bank without objection made to the bank and knowing it was in the possession of the bank, she ratified the acts of her agent. It would therefore have been erroneous to give it.

It is insisted that the appellee did not have such right of possession or ownership of the stock as would enable her to maintain trover. She was the absolute owner of the certificate, as the appellant knew by the statement in the writing by which it had been pledged to the bank and came to the bank's possession. There is no evidence that her father ever became the owner of it. His statement to the bank in her absence is not evidence against her. When the note for which the stock was pledged was satisfied the bank had no right to hold the stock longer and it was its duty, upon demand, to surrender it to the owner. The appellee was that owner and was entitled to the immediate possession of the stock, and this is sufficient to maintain trover.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*