## CHERRY v. INSULL UTILITY INVESTMENTS, Inc.

## SCHOENEMAN v. CORPORATION SECURITIES CO.

### Nos. 11679, 11680.

District Court, N. D. Illinois, E. D.
May 28, 1932.

No. 11679:

Allen & Dalbey, of Danville, Ill., and Cassels, Potter & Bentley, of Chicago, Ill., for receivers.

Tenney, Harding, Sherman & Rogers, of Chicago, Ill., for respondents.

Miller, Gorham & Wales, of Chicago, Ill., for defendant.

No. 11680:

Ashcraft & Ashcraft, of Chicago, Ill., for receivers.

Tenney, Harding, Sherman & Rogers, of Chicago, Ill., for respondents.

LINDLEY, District Judge.

On May 15, 1932, upon a creditor's bill and answer thereto, the court appointed receivers for and took jurisdiction of all assets of the defendant corporation. I shall not recount the detailed facts, but direct attention to the final effect of the proceedings, viz., that by a receivership in equity the court took into its custody for administration by its receivers all property of the corporation within the district. By the order the corporation, its officers, all creditors, and other parties in interest were restrained from interfering in any way with the jurisdiction thereby asserted and exercised.

It became apparent at once from the face of the pleadings that the affairs of the company were badly entangled, involved assets and liabilities running into many millions of dollars, and were embroiled in many complications of law and fact of such character as to necessitate a rather tedious and long protracted audit and investigation before the court could obtain adequate knowledge as to the rights and true situations of the various parties in interest. To the court it seemed desirable, in fact, imperative, therefore, in order that no interest suffer from unduly speedy action or be jeopardized otherwise, to consider ways and means, within the limits of proper administration of the estate, to preserve the existing status until some adequate knowledge of conditions might be brought home to the court and its representatives, the receivers.

It appeared that loans representing several millions of dollars had been made to the corporation by banks located in Chicago and New York; that collateral, consisting of the most part of capital stock in prosperous, extensive operating utility companies, had been deposited as security for such loans when originally made and increased in amount, from time to time thereafter, as depreciation of exchange market prices for same increased; that as a result substantially all the valuable assets of the company had eventually found their way to the lenders aforesaid, so that apparently there no longer remained any unpledged assets for distribution amongst unsecured creditors; that debentures and notes for many millions of dollars had been issued and sold to the public under conditions wholly unknown to the court; and that the circumstances under which said collateral security had been deposited were not and could not be ascertained without considerable delay. As a result of this situation, the court, desiring so to administer the estate as to conserve and protect properly the interests of the cestui que trusts of the estate, had on the day of issuance of the order herein attacked concluded that it was advisable, in order to prevent disposition of assets with undue haste and consequent impossibility of realization of return for unsecured creditors, to invite the banks extending the loans aforesaid to attend a conference of the interested parties in court at the earliest possible date, and had on the date mentioned prepared a letter to the receivers, suggesting that such invitation be extended looking forward to the adoption of a policy of co-operation between the interested parties and the court in the administration of the estate, and specifically to the desired end that, pending investigation and until the court might upon proper pleadings and evidence duly heard order otherwise, the secured creditors would seek no relief in the way of permission to foreclose liens or to sell collateral security. Without reference to legal rights, it was deemed only fair that, so long as the existing status should be preserved, the income from the securities, that is, dividends, should be delivered to the lenders to be accounted for by them as applied upon interest accruing upon the loans, and in case of surplus above such interest, as applied upon the principal of the indebtedness.

On the same day the receivers and their counsel appeared before the court, with the information that the banks in New York had advertised the collateral security, amounting in value to several millions of dollars, for sale in New York and Jersey City, N. J., the following morning, and upon verified petition,

relating said facts, prayed that such sales be restrained. Upon said petition, the banks were restrained from making such sales until the further order of the court. The court acted upon the obvious impossibility of notice, if the sales advertised for the next day were to be prevented.

The banks now move to dissolve this injunctional order. The motion is not one to quash process or to dismiss the petition, or to abate the proceedings or to obtain any relief other than that of dissolving the order. I take it, therefore, that the question before the court is whether it had, in this receivership, this sequestration of assets, such jurisdiction over the res of the estate as to enable it to preserve temporarily the status existing at the time the jurisdiction attached by forbidding lienholders from foreclosing their lien upon pledged property, until the disputed value thereof might be determined and until the court might be fully advised as to whether, without injury to the rights of the lenders, it should further delay the foreclosure or sale.

■■ The determination of this question involves some exposition of various fact and legal situations. Obviously the court has no jurisdiction over property the situs of which is beyond its territorial limits. On the other hand, all assets, the situs of which is within those limits, are in the custody of the court —sequestered by the court, removed beyond the power of interference therewith by any other court or by any public or private party without permission of the court. So the Supreme Court in Riehle v. Margolies, 279 U. S. 223, 49 S. Ct. 310, 312, 73 L. Ed. 669, said:

"The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit, Rouse v. Letcher, 156 U. S. 47, 49, 50, 15 S. Ct. 266, 39 L. Ed. 341; or by ancillary proceedings, White v. Ewing, 159 U. S. 36, 15 S. Ct. 1018, 40 L. Ed. 67. Compare Kelley v. Gill, 245 U. S. 116, 119, 38 S. Ct. 38, 62 L. Ed. 185. And it may, despite section 265 of the Judicial Code (28 USCA § 379), issue under section 262 (28 USCA § 377), or otherwise, all writs necessary to protect from interference all property in its possession. Julian v. Central Trust Co., 193 U. S. 93, 112, 24 S. Ct. 399, 48 L. Ed. 629."

In Mississippi Valley Trust Company v. Railway Steel Spring Company, 258 F. 346, 355 (C. C. A. 8) the court said: "A court which is administering property * * * through a receivership may properly draw to itself all disputes as to liens and other rights upon or pertaining to such property." See, also, Porter v. Sabin, 149 U. S. 473, at 479, 13 S. Ct. 1008, 37 L. Ed. 815; Ross-Meehan Brake Shoe Co. v. Southern, etc., Co. (C. C.) 72 F. 957; Hollander v. Heaslip (C. C. A.) 222 F. 808; Durand & Co. v. Howard & Co. (C. C. A.) 216 F. 585, L. R. A. 1915B, 998.

In People's Bank v. Calhoun, 102 U. S. 256, 261, 26 L. Ed. 101, the court said: "It was for the court having such possession to determine how far it would permit any other court to interfere with that possession, and what effect it would give to the attempt of another court to seize the property so under its control."

"The rule is not to be understood as absolutely preventing the acquisition of new rights to the fund in controversy after the commencement of the proceedings. Any person claiming to have acquired such an interest, while he cannot interfere under the process of another court, may, under the old equity practice, apply to the court which has jurisdiction of the fund, pro interesse suo, and his claim will be heard. The same result can now be accomplished by a petition and motion in the cause; and in administering the fund, the court will take care that the rights of prior liens or incumbrances shall not be destroyed; and will adopt proper measures, by reference to the master or otherwise, to ascertain them, and bring them before it."

■ The securities, sale of which was advertised, are capital stock of Illinois corporations; they are owned by the corporation, defendant in the original bill, likewise an Illinois corporation, whose property has passed to the court, through its receivers, subject to all valid liens thereon. Such property is of that species known as intangibles, as distinguished from real or chattel property. After conflict in the courts of various states and in the federal courts, the Supreme Court of the United States, reversing its prior decisions to the contrary, held in First National Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 178, 76 L. Ed. ——, on January 4, 1932, that the situs of such property as capital stock is not that of the corporation issuing same as previously held in Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439; Baker v. Baker, etc., Co., 242 U. S. 394, 37 S. Ct. 152, 61 L. Ed. 386; Jellenik v.

Huron Copper Mining Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647, and Illinois in Harris v. Chicago T. & T. Co., 358 Ill. 245, 170 N. E. 285, but is that of the owner thereof. It follows that the situs of the securities involved is beyond cavil in Illinois, the home of the owner. First National Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 178, 76 L. Ed. —; Baldwin v. Mo., 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303; Safe Deposit & T. Co. v. Virginia, 280 U. S. 83, 50 S. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386; In re Bronson's Estate, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632. In the case first cited the court said: "The former [ownership of shares by the stockholder] is an individual interest giving the stockholder a right to a proportional part of the dividends, and the effects of the corporation when dissolved, after payment of its debts * * * and this interest is an incorporeal property right which attaches to the person of the owner in the state of his domicile."

But these securities are pledged to the banks, which as a result have a lien thereon coupled with physical possession thereof, and it is asserted as a consequence that the legal title has passed to such pledgees, so that the situs of the pledged intangibles is that of the banks beyond the territorial limits of the court.

It is sometimes said that the pledgee receives legal title by virtue of the pledge. However, it is apparent that such so-called title is one of special property and subject to defeasance (if such term be properly applicable to personal property), and terminates upon compliance with the condition of such defeasance; namely, payment of the loan. There is, therefore, an interest in the pledge that may be divested only by foreclosure sale. Such situation in principle does not differ from that of a mortgagee upon real property, in possession of the mortgaged property, whose title is subject to defeasance by payment and may be perfected as against mortgagor's interest only by sale after notice or by foreclosure of the mortgage. A difference between the remedies of the mortgagee and those of the pledgee exists when foreclosure is by the terms of the mortgage or by law limited to a court foreclosure. It has never been understood that complete title in its full sense passes under either form of lien. Thus in Harris v. Chicago Title & Trust Company, 338 Ill. 245, at 266, 170 N. E. 285, 294, the court said: "Possession by a pledgee of certificates of stock indorsed in blank, when held for the purpose of security or pledged for a loan, does not vest the legal title to the stock in the pledgee, but gives him a special property right in the thing pledged. The general property or title in the stock remains in the pledgor, subject to the rights of the pledgee, until the pledge is foreclosed in accordance with the terms of the pledge agreement or discharged. This has long been the rule in Illinois. Boulter v. Joliet Nat. Bank, 295 Ill. 594, 129 N. E. 513; Allmon v. Salem Building Ass'n, 275 Ill. 336, 114 N. E. 170; Union Trust Co. v. Rigdon, 93 Ill. 458."

It follows that the title to these pledged securities remained in the pledgor and its successors, the receivers; that the situs of the owner (the defendant corporation), Illinois, determines the situs of the intangibles, that they are therefore within the territorial limits of this court, within its custody of this estate, and subject to the orders of this court in administration of the res thereof. The court, in the interest of conservation and preservation of assets, may prevent any and all interference therewith, except by permission of, or participation in the proceedings in, this court. The reasoning of the cases hereinbefore cited lead inevitably to these conclusions.

The order entered does not contravene any vested rights of the pledgee. The rule established by statute in bankruptcy cases to the effect that all liens in third parties are recognized and preserved is but declaratory of rights at common law and under the Constitution. Consequently the same rule controls in receiverships in equity. But the rule does not require that the parties shall be left to the same remedies as existed before the jurisdiction of the court attached. A particular form of remedy is not within constitutional protection. Thus in Re Waggoner's Estate (D. .C.) 206 F. 789, 792, the court said: "There is no principle more uniformly recognized and rigidly enforced by the courts than that valid liens, untainted by fraud, shall not be disturbed by the institution of bankruptcy proceedings. But this has reference entirely to the validity and obligation of the contract, and not to the remedies for enforcing the lienholder's rights. These can be changed without impairing the obligation of the contract. In re Williams' Estate, 19 Am. Bankr. Rep. 389, 156 F. 934, 84 C. C. A. 434; In re Utt, 5 Am. Bankr. Rep. 383; [Id.], 105 F. 754, 45 C. C. A. 32; Matter of Huggins, 24 Am. Bankr. Rep. 715, 179 F. 490, 103 C. C. A. 70, 29 L. R. A. (N. S.) 737."

See, also, In re Jersey Island Packing Company (C. C. A.) 138 F. 625, 627, 2 L. R. A. (N. S.) 560, where the court said: "The remedy may be altered without impairing the obligation of his contract, so long as an equally efficient and adequate remedy is substituted." See, in addition, Allebach v. Thomas (C. C. A.) 16 F.(2d) 853 (cert. denied 274 U. S. 744, 47 S. Ct. 590, 71 L. Ed. 1325); People's Bank v. Calhoun, 102 U. S. 256, 26 L. Ed. 101; Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322; Riehle v. Margolies, 279 U. S. 223, 49 S. Ct. 310, 73 L. Ed. 669.

The determination of the question here involved does not affect in any manner the right of the pledgees to seek relief in this court. Here they may have enforced any right to which they may be entitled under and by virtue of their contract by pledge. "The court and not the lienors is to decide" as to the mode of sale. In re Howard (D. C.) 207 F. 402, 417. In re Cohen v. Nixon & Wright (D. C.) 236 F. 407, 410, at page 412, the court said: " 'The individuals having such prior interest * * * must, if they desire to avail themselves of them, apply to the court either for liberty to bring ejectment, or to be examined pro interesse suo; and this, though their right to the possession is clear.' See, also, Murphy v. John Hofman Company, 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327; Hitz v. Jenks, 185 U. S. 155, at pages 165, 166, 167, 22 S. Ct. 598, 46 L. Ed. 851; Pugh et al. v. Loisel (C. C. A. 5th Cir.) 219 F. 417, 135 C. C. A. 221; Geo. B. Matthews & Sons et al. v. Jos. Webre Co. (D. C.) 213 F. 396."

It is insisted, however, that the court should not restrain a sale of pledged property, and reliance is placed upon In re Hudson Navigation Corp'n (C. C. A.) 57 F.(2d) 175, decided recently by the Circuit Court of Appeals for the Second Circuit.

If the opinion in the case cited is intended to announce the rule that a court of equity may not under any circumstances restrain foreclosure of liens or sales of pledged property, it is at odds with Isaacs v. Hobbs Tie & Timber Company, 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645, and Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060.

No good reason appears why there should be any difference in principle in the power of the court to restrain action by a court or a party from foreclosure of a lien upon realty without consent of court and that to restrain sale of securities whose situs is within court's jurisdiction. Until I know the situa- tion I surely have a discretionary power to preserve the existing status of trust property within my custody.

It is said that to interfere with sales of securities held by banks endangers the business of such institutions. Such might be true of permanent injunctions, but the order here is of temporary character, and is not intended to pass finally upon the merits of the pledges. It is intended merely to notify the banks that they may not of their own motion, at once, when assets upon which they claim liens come into the custody of the court in trust for the interested parties, ignore the custodia legis, and, without asking permission or leave of court, convert into cash securities of a value of many millions of dollars. It is intended to say to them that their liens when and if established shall be given recognition, but that they may not proceed to divest this court of its title without appeal to the court. This injunctional order is intended to serve as a temporary stay of interference with the court's property, until, upon proper hearing, the value of the pledged securities, mode of sale, and any other material question may be determined. If irreparable injury is liable to accrue to the pledgees, that fact can be established in proper petitions presented to the court.

In Re Henry (D. C.) 50 F.(2d) 453, 455, the court said: "The pledgee of bonds or of stocks holds possession of nothing except the evidence of a debt due the pledgor or of his right to share in the assets of a corporation."

The court held that collateral loan agreements are no exception to the rule that lienors must obtain permission of court to foreclose, saying:

"We have nothing to do with the doctrine of the inviolability of contracts. The whole question is embraced in these fact situation propositions. The loan for which the pledge was given must be paid; it cannot be paid without a sale of the pledge. The sole question is whether the bankruptcy court has exclusive jurisdiction to make the sale or whether in defiance of the bankruptcy court * * * some other court or the pledgee himself can sell. * * *

"The question is the quite different one of the right of the pledgee to take the assets of the bankruptcy estate out of the control of the bankruptcy court by selling them. The power to stop such sales is exercised daily by bankruptcy courts. Mortgagees to whom seized lands have been conveyed are so restrained; likewise judgment creditors who have taken lands in execution; in like

manner landlords who have distrained property for rent; plaintiffs in attachment in execution proceedings are also so restrained. No such pledgees are permitted to enforce their pledges by sales. Is the pledgee under so-called collateral loans an exception to the general rule? * * *

"Pledgees of bonds or stocks are none the less pledgees with a right of lien. This is the only real right they have. We see no difference in this respect between them and the pledgees of land. We are not unmindful of the difference between the possession of a power and the propriety of its exercise. A bankruptcy court is as much bound to have regard to the rights of pledgee creditors as of any other creditors and not to forget that the latter may have priority of right. A pledgee, because of this, should always be at liberty to apply to the court for leave to enforce his pledge."

In Re Purkett, Douglas & Co. (D. C.) 50 F.(2d) 435, 438, the court restrained a sale of bonds held as collateral to a note, saying: "No one is here seeking by summary proceeding to determine the claim of respondent to the securities pledged with him, or his right to sell or otherwise dispose of the same. What is here sought, and what this court has undertaken to accomplish, is to restrain the sale of said securities by respondent until the adverse claims of the respective parties can be adjudicated."

In Mississippi Valley Trust Co. v. Railway Steel Spring Co., 258 F. 346, 355 (C. C. A. 8), the court affirmed an order restraining the sale of collateral, basing its conclusion upon propositions stated thus: "Property in the hands of a receiver appointed by a court may not be interfered with, even to carry out private agreements, contracts or trusts. Wiswall v. Sampson, 14 How. 52, 66, 14 L. Ed. 322; In re Tyler, 149 U. S. 164, 181, 13 S. Ct. 785, 37 L. Ed. 689; Hitz v. Jenks, 185 U. S. 155, 22 S. Ct. 598, 46 L. Ed. 851; High on Receivers (4th Ed.) §§ 136, 138, 140. Furthermore a court which is administering property already in its hands through a receivership may properly draw to itself all disputes as to liens and other rights upon or pertaining to such property. Morgan's [Louisiana & T. R. & S. S.] Co. v. Railway, 137 U. S. 171, 11 S. Ct. 61, 34 L. Ed. 626; Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 37 L. Ed. 815; Farmers' Loan & Trust Co. v. [Lake St. El.] Railway, 177 U. S. 51, 20 S. Ct. 564, 44 L. Ed. 667; Wabash Ry. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Central Trust Co. v. Railway (C. C.) 57 F. 3; Toledo, etc., Ry. Co. v. [Continental] Trust Co., 95 F. 497, 36 C. C. A. 155."

It is said that the order was irregularly issued. It is not necessary now to decide this question, for the inquiry now before the court is limited to a determination of whether the order should be continued. In Mississippi Valley Trust Co. v. Railway Steel Spring Co., 258 F. 346, 350 (C. C. A. 8) the court said: "It is a well-recognized practice, upon applications for dissolution of restraining orders or preliminary injunctions on the ground of irregularities, to deny such petition, if at the time of the hearing the court is of opinion that such restraining order or preliminary injunction should issue in view of all the facts and circumstances then existing. 22 Cyc. Law & Proc. 978; 1 Joyce on Injunctions, § 291a; Warren v. Pim, 65 N. J. Eq. 36, 55 A. 66; Savoie v. Thibodeaux, 28 La. Ann. 169; Henderson v. Maxwell, 22 La. Ann. 357."

The doctrine there announced is applicable to the situation now confronting the court.

To the contention that the court cannot enforce this order even though the situs of these securities is within the district, it is sufficient reply that it is no objection to the validity of a restraining order that the court cannot punish the nonresident parties for contempt. Higgins v. California Prune and Apricot Growers, etc., 282 F. 550 (C. C. A. 2). Furthermore, I deem it well settled that a court with jurisdiction of the res may restrain the entire world from interference therewith. So in Ex parte Lennon, 166 U. S. 548, 17 S. Ct. 658, 660, 41 L. Ed. 1110, the Supreme Court said: "The facts that petitioner was not a party to such suit, nor served with process of subpœna, nor had notice of the application made by the complainant for the mandatory injunction, nor was served by the officers of the court with such injunction, are immaterial so long as it was made to appear that he had notice of the issuing of an injunction by the court. To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice."

Then, too, it is clear that the court is in a position to effect a complete prohibition of transfer of the securities. The issuing corporations, as well as the res, are, as we have seen, located within the court's jurisdiction and subject to such orders as the court in

proper proceedings shall make with reference to transfer thereof.

I am of the opinion that the motion to dissolve must be denied for the reason that the court, having jurisdiction of the res of the estate, should continue to restrain a sale of the collateral involved, the situs of which is within this district until the court can be more fully advised as to all material facts. The motion is therefore denied. The same order shall be entered in No. 11680 in equity, and this memorandum shall be made a part of the record therein as applicable thereto.